[No. F012161. Fifth Dist. Nov. 2, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO MELENDEZ, Defendant and Appellant.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

**COUNSEL**

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, J.**—Mario Melendez (defendant) and Cirilo E. Guzman were tried jointly for the second degree robbery of Michael Shirher (count I, Pen. Code, § 212.5, subd. (b)) and an assault with a deadly weapon upon Steve Herrera (count II, Pen. Code, § 245, subd. (a)(2)). In addition, defendant was charged with an arming allegation (Pen. Code, § 12022, subd. (a)) in count I. Defendant and Guzman were convicted of second degree robbery. The jury was deadlocked on the arming allegation and count II. A mistrial was declared as to these charges. Defendant appeals, claiming three instructional errors and prosecutorial misconduct. We reverse, finding two

separate instructional errors, one of which we discuss in the published portion of this opinion.

## STATEMENT OF FACTS

On November 30, 1988, Michael Shirher was working as the store manager at a Radio Shack in Bakersfield. A Hispanic man (Provencio) wearing a white sweater was in the store. He left and returned a few minutes later. Defendant entered the store and was being helped by Shirher when Provencio returned. Shirher watched Provencio when he was in the store the second time. He left again and returned a third time five minutes later. In the interim period, defendant made a purchase and left. When Provencio entered the store for the third time, Guzman was in the store. Provencio grabbed a videocassette recorder (VCR) and ran from the store.

Deputy Sheriff Steve Herrera was off duty that day and had gone to Radio Shack to make a purchase. When he arrived, his attention was drawn to a dark compact car. Defendant was in the car; Guzman and Provencio got out of the car and entered Radio Shack. Herrera thought it was unusual that the car was parked some distance from the store when there was parking available closer to the store.

Herrera saw Provencio pick up the VCR and run out of the store. Herrera chased Provencio. Guzman followed. The three of them ran behind the store building. Herrera went to the ground when he heard shots. Guzman told Herrera to stay down. Guzman had fired the shots; of this, Herrera was positive.

The same compact dark car was then observed by Herrera behind the building. He saw defendant standing at the open door of the driver's side of the car and recognized him as the same person he had seen in the car when it was parked at the front of the store. Although Herrera did not see defendant's face either time, he recognized him by other features. Herrera was not "absolutely positive" of his identification of defendant. Herrera returned to Radio Shack.

Police officer Mike Vest was on duty the evening of November 30, 1988. He was driving near the Radio Shack and saw two men in the alley; one was holding an object. He then heard gunshots. The two men jumped the fence into an apartment complex. Vest followed and saw several people standing around. Two members of the group looked like the two Vest had seen in the alley. They fled when they saw him. Vest chased the one wearing a white sweatshirt.

Officer Kevin Legg received a report of two individuals running from Radio Shack. While responding to this call, he received a report of the armed robbery at Radio Shack. Legg went to the apartment complex and saw the "suspect vehicle" drive by. He asked the driver to stop, but the driver drove away rapidly. Legg shined his light into the vehicle. Defendant was driving, and Guzman was the passenger. Legg got the license plate number from the car. After learning that defendant was the registered owner, Legg went to his house and saw the car. When Legg arrived, defendant and Guzman came out of the house. Guzman had changed his clothes.

Shirher and Herrera were taken to three locations and shown a total of five people. Shirher identified defendant and Guzman as being in the store that evening. Herrera identified Guzman as being in the store and shooting at him. He identified defendant as the person who was in the dark compact car in front of the building before the robbery and behind the building after the robbery.

A white sweatshirt was found near the path that Provencio fled. The VCR was found behind Radio Shack in some shrubbery behind a tree. The officers failed to find a gun or expended cartridges.

### Defense

James Clifton testified that he was at the apartment complex the evening of November 30, 1988. He saw the officers chase some men through the complex. He saw one of the men jump into a dark car driven by a White man with blond hair and a mustache. On cross-examination Clifton was shown a picture of defendant's car and said the photo looked like the car he saw except it was not the same color. He also testified that he was threatened by a tall White man that he would be beaten if he testified.

### DISCUSSION

### I.

### Unanimity Instruction

The jury was instructed that it could find defendant and Guzman guilty as principals under theories of active participation, aiding and abetting, and/or conspiracy. Aiding and abetting and conspiracy were further defined for the jury.

The People argued that defendant was guilty of both counts and the arming allegation as either an aider and abettor or a conspirator. It was not

argued that defendant was a direct participant in the robbery. In discussing aiding and abetting and conspiracy, the prosecutor stated, "I think there is a bunch of ways to find both men guilty of the count alleged against them." The prosecutor's comments on conspiracy were as follows:

"Conspiracy is simply an agreement to do something in the future or however far in the future, that is illegal. Specifically agree to do an act that is illegal and all you have to do is have an overt act, that can be anything taken. It doesn't have to be the illegal act itself. If you find taking the VCR, firing the handgun, driving the getaway car, dropping them off outside, so I will talk about several different ways to look at the conspiracy issue. If you get back there and are talking about it and somebody says I don't think there was enough agreement to show beforehand, but I do think he was the person who saw what was happening going on and knew what was going on, he is an aider and abettor. Of course he knew what was going on; drop him off, pick him up later on, left the scene with him. He was a member of the conspiracy. It doesn't matter what theory you believe if you believe the gentlemen are guilty.

"Eight people can say he is an [*sic*] a conspirator and four people can say he is an aider/abettor. Here are the elements as the Judge has given you of aiding and abetting.

"Number one, if the unlawful purpose of the perpetrator; taking the VCR, and if it is under a certain amount, it is petty theft. If it is over a certain amount it can be grand theft. That suspect may have gone in there to steal a telephone and decided to steal a VCR. As long as he knew the purpose was to steal something that is sufficient.

"Two, with the intent or purpose of committing, encouraging, or facilitating the commission of the crime a person need not be present at the scene of the crime. Mr. Melendez, being behind the Radio Shack ready to pick him up and he is later got away from the police. . . .

"[Conspiracy] is an agreement between two or more with specific intent to agree to commit a public offense such as a robbery and we need not show that they talked about it, that there was express agreement to it. We can show it circumstantially. I don't have to get in their heads and tell you what they were thinking or talking about with the specific intent to commit such offense. They intended to take the VCR. The fact Mr. Melendez was in the store previously, a third suspect was in there, the fact they pretended they didn't know each other.

"Three, followed by an overt act committed in this state by one or more of the parties for the purpose of attempting—if it is done in furtherance of the conspiracy. Any one of these things can be found to be an overt act."

The prosecutor also argued if the jury believed defendant was there and saw what happened, he was an aider and abettor. If the jury believed there was a plan beforehand, anything in furtherance of that plan made defendant responsible.

The theme of defendant's argument was the People failed to prove his involvement. Defendant argued that Shirher saw nothing that connected him to Provencio, and he was not in the store when the crime was committed. Therefore, conspiracy was not shown. Defendant focused on the uncertainty of Herrera's identification of him. Defendant asserted that Officer Legg's testimony was inconsistent; in contrast, he argued, Clifton's testimony was consistent and more believable. Defendant stated that regardless of which theory the jury used—aiding and abetting or conspiracy—there was not enough evidence to find him guilty. Proof of an agreement, he urged, was totally lacking.

The jury was not given CALJIC No. 17.01, the standard unanimity instruction. It provides: "The defendant is accused of having committed the crime of _____ [in Count _____ ]. The prosecution has introduced evidence tending to prove that there is more than one [act] [or] [omission] upon which a conviction [on Count __] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of such [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count _____ ], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict." (CALJIC No. 17.01 (5th ed. 1988) bound vol., brackets in original.)

■ Defendant contends he was deprived of his right to a unanimous verdict because the prosecution relied on two different theories of liability and the jurors were not told that they must unanimously agree as to the acts upon which liability was based. Defendant's factual argument is as follows:

"The problem regarding jury unanimity arises because different jurors could have attached criminal liability arising out of different factual bases. For instance, some jurors may have found beyond a reasonable doubt that appellant was a co-conspirator, because he was the one who dropped off Guzman and the actual thief at the Radio Shack store. From this fact they may have inferred the existence of a conspiracy. These same jurors may have had a reasonable doubt that appellant was the person who drove Guzman from the vicinity of the crime.

"Other jurors may have found beyond a reasonable doubt that appellant was an aider and abettor, because he drove Guzman from the scene. (This

would have amounted to aiding in the commission of the crime, since robbery is a continuing criminal transaction which does not terminate until the perpetrators escape with the loot or reach a place of safety.) [Citations.] These jurors may have concluded that appellant was not the person who drove Guzman and the thief to the Radio Shack.

". . . . . . . . . . . . . . . . . . . .

". . . Although the jurors may have been convinced that appellant drove the others to the Radio Shack and actually entered the store, not all may have been convinced that this activity amounted to involvement in a conspiracy. Similarly, although the jurors may have concluded that appellant was hanging around a car in the vicinity of the store as the robbery reached its denouement, not all may have reached the further conclusion that this amounted to aiding and abetting the actual perpetrators. [Citations.]

". . . . . . . . . . . . . . . . . . . .

". . . Although the defense also raised the issue of mistaken identity as to both the 'driving to the scene' issue and the 'getaway' issue, the jury could have made a differentiation between the strength of the defense case as to each situation. As noted above, the prosecution witnesses for the two situations differed. As to Herrera, the defense simply argued that he did not get a very good view of the person who seemed to accompany Guzman and the thief to the vicinity of Radio Shack. As to Legg, the defense was not only that the officer could not see the driver of the car well, but also that his description did not match appellant's actual appearance, and was contradicted by the testimony of the only other witness who saw the getaway car. Thus the jury could well have accorded different weight to the defense case as to the two actions that would support appellant's conviction."

Respondent counters that a unanimity instruction was not required because there was but one act, the robbery, and the jury was not required to unanimously agree on the legal theory of guilt. Respondent also argues that the robbery constituted a continuous course of conduct not requiring unanimity instruction. Finally, respondent contends the unanimity instruction was not required because the jury's verdict implied that it rejected the only defense offered.

Our discussion of jury unanimity requires a review of the spectrum of circumstances discussed in previous cases. The case law is incapable of being distilled to a single rule. ■■■ The well-settled starting point, however, is the constitutionally based concept that "the defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to

each count charged." (*People* v. *Jones* (1990) 51 Cal.3d 294, 305 [270 Cal.Rptr. 611, 792 P.2d 643].)

From this constitutional underpinning, four principles have emerged. First, if the prosecution shows several acts and each act is a separate offense, a unanimity instruction is required. In *People* v. *Madden* (1981) 116 Cal.App.3d 212 [171 Cal.Rptr. 897], we gave the following summary: "Decisional law in California has held for many years that such an instruction is required. The rule was first announced in *People* v. *Castro* (1901) 133 Cal. 11, 13 . . . (several acts of rape over a course of several months) and has been applied in many cases thereafter (*People* v. *Williams* (1901) 133 Cal. 165, 168-169 . . . (multiple acts of rape over a four-month period); *People* v. *McNeill* (1980) 112 Cal.App.3d 330, 335-336 . . . (assault on different victims); *People* v. *Alva* (1979) 90 Cal.App.3d 418, 424-426 . . . (multiple unlawful sex acts over five-month period); *People* v. *Gavin* (1971) 21 Cal.App.3d 408, 418-420 . . . (possession of narcotics); *People* v. *Dutra* (1946) 75 Cal.App.2d 311, 321-322 . . . (contributing to the delinquency of a minor where there are several acts of sex perversion); *People* v. *Martinez* (1922) 57 Cal.App. 771, 774 . . . (several acts of rape; no prejudice because no contradictory evidence as to the acts); *People* v. *Ruiz* (1920) 48 Cal.App. 693, 694-696 . . . (several acts within an hour of assault with intent to commit rape); *People* v. *Elgar* (1918) 36 Cal.App. 114 . . . (two acts of rape); *People* v. *Hatch* (1910) 13 Cal.App. 521, 534-536 . . . (several acts of embezzlement); *People* v. *Moreno* (1973) 32 Cal.App.3d Supp. 1, 8-9 . . . (two acts of resisting arrest approximately one-half hour apart); *People* v. *Thompson* (1956) 144 Cal.App.2d Supp. 854, 859 . . . (jury must agree the defendant unlawfully used narcotics *or* was addicted to narcotics); *People* v. *McMillan* (1941) 45 Cal.App.2d Supp. 821, 829-830 . . . (multiple batteries); see also *People* v. *Scofield* (1928) 203 Cal. 703, 709-710 . . . (hit and run statute with separate parts—jury must all agree on which part was violated))." (*Id.* at p. 216, fn. omitted.)

The present case is clearly not encompassed within this principle. There was but one act of robbery.

■ The second established principle is that a unanimity instruction is not required when the case falls within the continuous course of conduct exception.

"This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. (E.g., *People* v. *Mota* (1981) 115 Cal.App.3d 227, 231-234 . . . [repeated acts of rape during one hour].) The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over

a period of time. (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 . . . [child abuse].)" (*People* v. *Thompson* (1984) 160 Cal.App.3d 220, 224 [206 Cal.Rptr. 516], brackets in original; see also *People* v. *Diedrich* (1982) 31 Cal.3d 263, 282 [182 Cal.Rptr. 354, 643 P.2d 971].)

In *People* v. *Madden, supra*, 116 Cal.App.3d 212, we determined that the continuous course of conduct exception should be narrowly drawn.

"Conceptually, the exception of continuous conduct resulting in but one offense is quite limited. There is a fundamental difference between a continuous crime spree and continuous conduct resulting in one specific offense. The continuous conduct exception only really applies, if at all, to those types of offenses where the statute defining the crime may be interpreted as applying, on occasion, to an offense which may be continuous in nature such as failure to provide, child abuse, contributing to the delinquency of a minor, driving under the influence and the like (see *People* v. *White* (1979) 89 Cal.App.3d 143, 151 . . . (pandering); *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 . . . (child abuse); *People* v. *Heideman* (1976) 58 Cal.App.3d 321, 333 . . . (possession of a destructive device); *People* v. *Feldman* (1959) 171 Cal.App.2d 15, 25 . . . (concealing stolen property); *People* v. *Lowell* (1946) 77 Cal.App.2d 341, 347-348 . . . , and *People* v. *Schoonderwood* (1945) 72 Cal.App.2d 125, 127 . . . (contributing to the delinquency of a minor, but see *People* v. *Dutra* [(1946)] 75 Cal.App.2d 311, 321-322); *People* v. *Knight* (1939) 35 Cal.App.2d 472, 474 . . . (driving under the influence); *People* v. *Jarvis* (1933) 135 Cal.App. 288, 309-310 . . . (unlicensed fruit dealer); *People* v. *Morrison* (1921) 54 Cal.App. 469, 471 . . . (failure to provide for minor child); *People* v. *Simon* (1913) 21 Cal.App. 88, 90-91 . . . (multiple acts to cause an abortion)). Insofar as cases cited herein might be read as holding that multiple sex offenses constitute a continuous course of conduct or a single act, we disagree. Multiple sex acts cannot be held to be continuous conduct on a theory of there being but one act of sexual abuse. In *People* v. *Perez* (1979) 23 Cal.3d 545 . . . , the defendant committed numerous sexual offenses upon a single victim during an uninterrupted period of some 45-60 minutes. Our Supreme Court held that the defendant could be convicted and punished for each separate act/offense." (*People* v. *Madden, supra*, 116 Cal.App.3d 212, 218, fn. omitted.)

The "continuous course of conduct" exception—when the acts are so closely connected that they form one transaction—is meant to apply not to all crimes occurring during a single transaction but only to those "where the acts testified to are so closely related in time and place that the jurors reasonably must either accept or reject the victim's testimony in toto." (*People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 791, fn. 5 [190 Cal.Rptr.

554], disagreed with on other grounds in *People* v. *Kurtzman* (1988) 46 Cal.3d 322, 330 [250 Cal.Rptr. 244, 758 P.2d 572].) This analysis is very similar to that set forth in the California Supreme Court case of *People* v. *Jones, supra,* 51 Cal.3d 294 regarding resident child molesters.

"In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. [Citation.] . . . But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*People* v. *Jones, supra,* 51 Cal.3d at pp. 321-322.)

Respondent's assessment that this case falls into the "single course of conduct" exception misses the mark. Robbery is not one of those crimes that involves continuous conduct resulting in one specific offense; a robbery involving a single taking is not an ongoing crime. Although the acts here surrounding and encompassing the robbery were closely related in time and place, many of the acts were testified to by different witnesses and occurred at distinguishable places and times, such that a juror might believe that defendant committed one or more of the acts and also believe that defendant did not participate in one or more of the other acts. Thus, it cannot be said there was no reasonable likelihood of juror disagreement as to the particular acts. The prosecution's evidence here was not such that the jury could have reasonably only believed or rejected it in toto.

■ Analogous to the single course of conduct exception is the third established principle, that the failure to give CALJIC No. 17.01 is harmless when disagreement by the jury is not reasonably probable. (*People* v. *Burns* (1987) 196 Cal.App.3d 1440, 1458 [242 Cal.Rptr. 573].)

In *People* v. *Carrera* (1989) 49 Cal.3d 291 [261 Cal.Rptr. 348, 777 P.2d 121], joint custodians of money were robbed. Defendant was charged with one count of robbery naming the two victims. On appeal he claimed it was error to not give CALJIC No. 17.01. (*Id.* at p. 311.) The California Supreme Court found "[i]t was not necessary that the jury distinguish between the two victims as there was no evidence here from which the jury could have found defendant was guilty of robbing one of the victims and not the other." (*Id.* at pp. 311-312.)

Similarly, in *People* v. *Ramirez* (1987) 189 Cal.App.3d 603 [233 Cal.Rptr. 645], the defendant was found guilty of conspiracy to commit murder. He

contended it was error to not give CALJIC No. 17.01 as to which overt acts supported the conspiracy. The court found the failure to give CALJIC No. 17.01 to be harmless. "[T]he evidence supporting each act was the same— the victim's testimony—so that there was no basis for the jury to conclude that some but not all of the acts took place." (*Id*. at p. 613.) The court concluded that since there was no realistic possibility of disagreement among the jurors the error was harmless. (*Id*. at pp. 614-615.)

The defendant in *People* v. *Vineberg* (1981) 125 Cal.App.3d 127 [177 Cal.Rptr. 819] contended it was error to not instruct on the form of theft committed. The appellate court disagreed. "Any juror who found that defendants took possession of the property with the intent to convert it to their own use at some later time (theft by trick) must certainly have also found that defendants committed an embezzlement when the property was in fact sold. Thus, the jurors unquestionably agreed unanimously that a theft was committed when the stored property was sold, irrespective of when they believed that the intent to steal was first formulated." (*Id*. at p. 139.)

In the instant case, the jurors could reasonably have disagreed as to when defendant was involved and how he was involved in the robbery. Thus, contrary to respondent's assertion, this is a case where jurors could disagree on which act defendant committed and still convict him of the crime charged.

Respondent also asserts that even if it was error to not give the instruction, defendant failed to show prejudice because the jury's verdict implied that the jury did not believe the only defense offered. To start, this argument addresses only a case in which the evidence did not clearly distinguish one act from the next or only one witness testified to different acts committed by the defendant. (*People* v. *Deletto* (1983) 147 Cal.App.3d 458, 466-469 [195 Cal.Rptr. 233].)

Additionally, as previously set forth, although the central thrust of the defense here was mistaken identity and a total lack of involvement, defendant also argued that there was no evidence of an agreement and that his presence in the area did not unambiguously point to his involvement in the crime. We note this situation contrasts with one where "the evidence demonstrated beyond a reasonable doubt [] that defendant was guilty of robbery with respect to each of the items of personal property taken from the victim" and the slight differences in defenses offered to the taking of each item were "without significance," resulting in no prejudice from the omission of a unanimity instruction. (*People* v. *Stankewitz* (1990) 51 Cal.3d 72, 100 [270 Cal.Rptr. 817, 793 P.2d 23].) Defendant here offered more than

one defense and, while all jurors obviously rejected the defense of mistaken identity, there is still the reasonable possibility that jurors found defendant was involved based on different and distinguishable acts and that their agreement on the particular acts was not unanimous.

■ The fourth principle applicable to the question whether unanimity instructions are required is that the jury is not required to agree on the specific "theory" of guilt. (*People* v. *Failla* (1966) 64 Cal.2d 560, 569 [51 Cal.Rptr. 103, 414 P.2d 39].) In *People* v. *Chavez* (1951) 37 Cal.2d 656 [234 P.2d 632] the defendant was convicted of murder. The chief evidence against him was that offered by a witness to the homicide. Defendant testified to a significantly different version of events. On appeal, defendant contended the court "erred in refusing to instruct the jury that they must unanimously agree as to the theory supporting the conviction of murder." (*Id*. at p. 670.) The California Supreme Court disagreed. " ' "It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other." ' " (*Id*. at p. 671.) *Chavez* was followed in *People* v. *Nye* (1965) 63 Cal.2d 166 [45 Cal.Rptr. 328, 403 P.2d 736] and *People* v. *Milan* (1973) 9 Cal.3d 185 [107 Cal.Rptr. 68, 507 P.2d 956].

In *People* v. *Failla, supra,* 64 Cal.2d 560 the defendant was convicted of five counts of burglary arising from the entry into the apartment of five different female victims. (*Id*. at p. 563.) The defendant contended that the jury had to be instructed that in order to find him guilty of burglary they must agree on the particular felony he intended at the time of each entry. (*Id*. at p. 567.) The Supreme Court disagreed. "[I]n prosecutions for burglary, as in murder and theft cases, the jurors need not be instructed that to return a verdict of guilty they must all agree on the specific 'theory' of the entry—i.e., what particular felony or felonies the defendant intended at the time—provided they are told they must be unanimous in finding that a felonious entry took place." (*Id*. at p. 569.)

In *People* v. *Vargas* (1988) 204 Cal.App.3d 1455 [251 Cal.Rptr. 904] the defendant was convicted of one count of felony child abuse and endangerment. The victim had been burned, bitten, bruised and whipped. Defendant's defense at trial was that she did not inflict the injuries but passively acquiesced while Aguilar caused the victim's injuries. She claimed a unanimity instruction was required. The appellate court disagreed, finding a continuous course of conduct.

"Where a single course of conduct is proved at trial, it is permissible for members of the jury to determine that the underlying facts establish a

violation of the statute under different legal theories such as direct infliction of abuse or permitting the child's health or safety to be endangered. The jury need not agree unanimously on the *legal theory* that defines a given set of facts as criminal conduct." (*People* v. *Vargas, supra,* 204 Cal.App.3d 1455, 1465.) Justice McCloskey dissented, finding that the case was presented on more than one continuing course of conduct and the jurors must unanimously agree on the course of conduct causing the injury.

▌ The critical distinction from the above case is that here the facts were such that not only could the jury have found defendant guilty based on different theories (aiding and abetting or conspiracy), but these theories could arise from one or more of the many different segments of the entire transaction. This is not a case where there was but a single view of the transaction subject to two interpretations. Some jurors may have believed that defendant was guilty of conspiracy based on Shirher's testimony that defendant was in the store earlier when Guzman was in the store and disbelieved that defendant was in any other way involved. Some jurors might have believed that Herrera's identification of defendant was insufficient but that Officer Legg's testimony defendant was in the car with Guzman was sufficient to link defendant to the crime. Others might have believed defendant was not in the car (based on Clifton's testimony), yet his association with Guzman in the store (as testified to by Shirher) and at his apartment (as testified to by Legg) might have been sufficient for them to believe he was guilty of the crime. The facts here are susceptible to these as well as other interpretations.

Such a "patchwork verdict," as defendant describes it, is not acceptable.

▌ "Like the 'reasonable doubt' standard, which was found to be an indispensable element in all criminal trials in *In re Winship,* 1970, 397 U.S. 358 . . . , the unanimous jury requirement 'impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue'. 397 U.S. at 364 . . . . The unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required." (*United States* v. *Gipson* (5th Cir. 1977) 553 F.2d 453, 457-458, fns. omitted.)

▌ Therefore, the instant case does not fall within any of the categories governed by the four discussed principles. However, when the circumstances here are analyzed against these established principles, a fifth principle emerges. Where a single crime can be proven by different theories based

on different acts and at least two of these theories rely on different evidence, and where the circumstances demonstrate a reasonable possibility that a juror will find one theory proven and the other not proven but that all of the jurors will not agree on the same theory, a unanimity instruction must be given. Here, defendant was linked to the crime by different acts. The acts were testified to by different witnesses. The jury was not told it had to unanimously agree which act formed the basis of his criminal liability. The problem was exacerbated by the prosecutor's comment that the jurors need not agree on a single theory or set of facts in support thereof in order to return a guilty verdict. It therefore cannot be assumed that the jury unanimously agreed as to just what the defendant did that made him accountable for the robbery. The judgment must be reversed.

II.-IV.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment is reversed.

Stone (W. A.), Acting P. J., and Thaxter, J., concurred.

---

* See footnote, *ante*, page 1420.