[No. G013472. Fourth Dist., Div. Three. Dec. 21, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JORGE O. BOJORQUEZ PEREZ, Defendant and Appellant.

**COUNSEL**

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Laura Whitcomb Halgren, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—Jorge O. Bojorquez Perez was charged with second degree robbery (Pen. Code, §§ 211, 212.5, subd. (b), & 213, subd. (a)(2));[1] personally using a deadly and dangerous weapon (§ 12022, subd. (b)); and a prior serious felony conviction (§ 667, subd. (a)). A jury convicted Perez of second degree robbery and found the weapon use allegation true. In the bifurcated court trial, the court found the prior serious felony allegation true. Perez was sentenced to eleven years in prison based on the upper term of five years for second degree robbery, one year for the weapon use enhancement and five years for the prior serious felony conviction.

I

On June 9, 1992, Suzanna Gomez was working as a cashier at the Azteca Market in Huntington Beach when Perez entered the store. The store owner,

---

[1]All further statutory references are to the Penal Code.

Luis Alfredo Bonilla, saw Perez and Gomez talking. Perez first asked about pots and pans and wanted change for a dollar bill to make a phone call. Gomez opened the cash register and then realized Perez was pointing a gun at her. Perez told Gomez to give him all the money. He put a white plastic bag on the counter and instructed her to put the money in it. She complied. Perez grabbed the bag and walked out.

Gomez called to Bonilla, telling him she had been robbed. Bonilla gave chase. As he rounded the corner, he saw Perez, who looked back and started to run. Bonilla stayed about 30 feet behind Perez because he knew he had a gun. He saw Perez enter the driver's side of a blue car, apparently empty, and drive away. Bonilla noted the license number and called the police.

About the same time, Huntington Beach Police Officer David Dierking was on patrol and heard a transmission regarding the robbery. About a mile and a half away from the crime scene, he saw a car matching the suspect vehicle description. Perez, alone in the car, pulled over after Dierking signaled to him. Dierking inspected the car, finding a white bag containing cash, a B.B. gun and a white sweatshirt turned inside out. A dollar bill was in Perez's front pocket.

Gomez and Bonilla were brought to the scene to identify the suspect. They noticed Perez's shirt was dark while the robber had been wearing white. Gomez thought Perez looked similar to the robber but was not sure because Perez was moving his head around.[2] Bonilla identified Perez as the man he had seen in the store and chased down the street.

Perez identified himself as Carlos Garcia. He was found to be suffering from a diabetic seizure and was taken to the hospital. He continued to claim he was Carlos Garcia until Dierking told him his fingerprints would be checked for previous arrests. Perez then gave his true name.

### Defense

Perez testified that on June 9, 1992, he met an acquaintance, Arturo, who requested a ride to Anaheim. On the way, Arturo, who was driving, said he was planning a robbery and displayed a B.B. gun. Perez said he did not want trouble. Arturo parked near the Azteca Market and left the car, taking the gun and a plastic bag. Arturo told Perez to stay while he made a phone call. Arturo was wearing a white sweatshirt.

Perez, feeling ill from his diabetes, lay down in the front seat. Through the mirror, he saw Arturo heading toward the car with a man chasing him.

[2] Later, in a photo lineup, Gomez identified Perez as the robber.

Arturo entered the car, took off his sweatshirt, threw everything on the floor and drove off. After a short distance, he stopped the car, got out and tried to take the money; Perez stopped him, saying he would return the money. Arturo ran away and Perez drove off.

Perez was stopped by the police. He was confused due to his illness. When asked whose car he was driving, Perez said "Carlos Garcia" because that was who sold him the car.

### Rebuttal

The prosecution played a tape of Dierking's interview with Perez at the hospital. Perez claimed that before the incident, Arturo mentioned robbing a store and promised to give Perez half of the money. Arturo showed him the gun which Perez touched, verifying it was real. Perez then drove to the store, while Arturo showed him the way. Perez said they were going there because Arturo intended a robbery.

Outside the store, Arturo changed his mind about giving Perez half the money. Arturo wanted Perez to drive the car. Perez said he told Arturo not to go through with the robbery; if Arturo did rob the store, Perez would leave to avoid getting into trouble. Perez then waited for Arturo in the car, and when Arturo ran out of the store with a bag, Perez was in a nervous panic and told Arturo he would have to drive.

## II

Perez contends the trial court erred by failing to instruct the jury sua sponte that it must unanimously agree upon which act it relied on in finding him guilty. (CALJIC No. 17.01.)[3] He claims the jurors could have disagreed as to the exact act he committed because the prosecution asserted two separate criminal acts: Either he entered and robbed the store *or* drove the car to the store.

A unanimous jury verdict is required in criminal cases. (*People* v. *Jones* (1990) 51 Cal.3d 294, 321 [270 Cal.Rptr. 611, 792 P.2d 643]; see Cal.

---

[3]CALJIC No. 17.01 provides: "The defendant is accused of having committed the crime of _____ [in Count _____]. The prosecution has introduced evidence tending to prove that there is more than one [act] [or] [omission] upon which a conviction [on Count _____] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of such [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count _____], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict."

Const., art. I, § 16.) California courts disagree, however, whether a jury must also unanimously agree on the facts supporting each element of the crime. Two decisions, containing facts similar to our case, have taken opposite positions. *People* v. *Melendez* (1990) 224 Cal.App.3d 1420 [274 Cal.Rptr. 599] holds CALJIC No. 17.01 is required. *People* v. *Davis* (1992) 8 Cal.App.4th 28 [10 Cal.Rptr.2d 381] disapproves of *Melendez*, holding the instruction is not required. For reasons we now discuss, we agree with *Davis*.

We begin with *Melendez*. Melendez, Guzman and a third man, Provencio, participated in a store robbery. There was conflicting evidence as to Melendez's exact involvement. A witness testified a store clerk helped Melendez make a purchase, while Provencio took a videocassette recorder and ran from the store. But a deputy sheriff testified Melendez was waiting in a car outside while the other two men robbed the store. The deputy noticed the car behind the building where he chased the robbers; Melendez was standing next to it with the door open. The deputy was not sure the driver was Melendez because he did not actually see the driver's face; however, he, nevertheless recognized Melendez.

Another witness, a police officer, testified that after hearing the robbery report, he saw Melendez driving the suspect vehicle. Upon learning Melendez was the registered owner, the officer went to Melendez's home where he found Melendez and Guzman. (*People* v. *Melendez*, *supra*, 224 Cal.App.3d at pp. 1423-1424.)

The court instructed the jury they could find Melendez guilty as a principal under three theories of liability: active participation, aiding and abetting, and/or conspiracy. However, the prosecutor argued Melendez was guilty as either an aider and abettor or a conspirator, *not* an active participant. The prosecutor told the jury, " 'Eight people can say he is . . . a conspirator and four can say he is an aider/abettor.' " (*People* v. *Melendez*, *supra*, 224 Cal.App.3d at p. 1425.) The jury found Melendez guilty of second degree robbery.

On appeal, Melendez argued he was deprived of a unanimous jury verdict because the prosecution relied on two different theories of liability and the jurors were not instructed they must unanimously agree upon which acts constituted the basis of liability. " 'The problem regarding jury unanimity arises because different jurors could have attached criminal liability arising out of different factual bases.' " (*People* v. *Melendez*, *supra*, 24 Cal.App.3d at p. 1426.) Melendez claimed jurors may have believed different evidence and concluded he was criminally liable based on different alleged acts. Some may have believed he was not in the store, his liability arising from his

contact with the other men outside the store before and after the robbery. Others may have rejected the testimony that he drove the car to the store and/or away from the store, but believed he went inside the store. Melendez claimed some jurors may have believed certain evidence and found he was a conspirator but not an aider and abettor. At the same time, some jurors may have rejected the evidence relied on by the other jurors, but found, based on yet other evidence, that he was an aider and abettor. The jury may have convicted Melendez without unanimously agreeing on the acts he committed. (*Id.*, at pp. 1424-1427.)

The Court of Appeal agreed with Melendez. It recognized jurors need not unanimously agree on the specific theory of liability, but concluded this rule was applicable only when separate *theories* arise from one set of facts. In other words, "Where a single crime can be proven by different theories based on different acts and at least two of these theories rely on different evidence, and where the circumstances demonstrate a reasonable possibility that a juror will find one theory proven and the other not proven but that all of the jurors will not agree on the same theory, a unanimity instruction must be given." (*People* v. *Melendez, supra*, 24 Cal.App.3d at pp. 1433-1434).

In *People* v. *Davis, supra*, 8 Cal.App.4th 28, Davis, Spence and Mosley were convicted of robbery. A store clerk testified she saw Spence and Mosley enter the store and that Mosley was holding a sawed-off shotgun. Spence ordered her to open the jewelry cases. Additional witnesses identified both men as the robbers and Mosley as the one holding a shotgun. Two other witnesses saw, or believed they saw, three Black men involved in the robbery. (*People* v. *Davis, supra*, 8 Cal.App.4th at p. 30.)

Officer Medero testified he saw Spence driving the suspect vehicle, while another person ducked in the backseat. The car sped off; Medero gave chase until Spence skidded into another car, stopped, and got out. Davis and Mosley opened the passenger doors and fled towards heavy brush. Officers surveying the scene in a helicopter saw the three run from the car. They followed the fleeing driver with a floodlight. Spence and Mosley were soon apprehended. Several hours later, the officers were collecting scattered jewelry when they found Davis under some bushes. They also found two pillowcases containing jewelry, a sawed-off shotgun and a license plate inside the car. (*People* v. *Davis, supra*, 8 Cal.App.4th at pp. 31-32.)

On appeal, Davis claimed the court erred in failing to instruct the jury sua sponte with CALJIC No. 17.01. He argued the jury could have based its verdict either on a direct-perpetrator theory or an aider-and-abettor theory. (*People* v. *Davis, supra*, 8 Cal.App.4th at pp. 32-33.)

The Court of Appeal affirmed the conviction. It recognized, "In California, as in most American jurisdictions, criminal verdicts must be unanimous." (8 Cal.App.4th at p. 33.) The court explained the issue is "about what must jurors unanimously agree[.]" (*Ibid.*) *Davis* considered two possibilities. It first examined the rule enunciated in *State* v. *Sullivan* (1903) 173 N.Y. 122 [65 N.E. 989], which "requires the jurors unanimously agree about the ultimate issue, that is, whether the defendant is guilty of the charged offense." (*People* v. *Davis, supra,* 8 Cal.App.4th at p. 34.)

"The *Sullivan* rule takes as irrelevant any jury disagreement on subordinate issues. It matters not that jurors may disagree over the theory of the crime . . . . Nor does it matter that they disagree on the theory of participation, for example, whether there was a direct participation or aiding and abetting or coconspiracy. Nor does it matter that they disagree about the facts proving any of these theories. If each juror concludes, based on legally applicable theories supported by substantial evidence, that defendant is guilty of the charged offense, the defendant is properly found guilty even if the jurors disagree about the particular theories or facts." (*People* v. *Davis, supra,* 8 Cal.App.4th at p. 34.)

The *Davis* court then discussed the cases which had rejected the ultimate-issue test. Specifically, the court addressed *United States* v. *Gipson* (5th Cir. 1977) 553 F.2d 453, 457-458: " 'The unanimity rule . . . requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." (*People* v. *Davis, supra,* 8 Cal.App.4th at p. 35.)

The *Davis* court found *Sullivan* the better reasoned rule. Citing *Schad* v. *Arizona* (1991) 501 U.S. 624 [115 L.Ed.2d 555, 111 S.Ct. 2491], the court noted the Supreme Court's rejection of the *Gipson* rule, finding it unworkable. *Davis* concluded the theories espoused in *Sullivan* were constitutionally firm.[4]

The *Davis* court also noted the theory espoused in *Sullivan* has withstood California Supreme Court scrutiny. Indeed, *Davis* recited several instances in

---

[4]Schad argued jurors must unanimously agree on the theory of liability in a first degree, capital murder case where the statute provided a finding of guilt based on either premeditation and deliberation or felony murder. However, the *Schad* court characterized the issue as the permissible breadth in defining criminal conduct, as reflected in jury instructions applying the definitions, rather than jury unanimity. (*People* v. *Davis, supra,* 8 Cal.App.4th at p. 36.) Justice Souter, in a plurality opinion, concluded there was no disparity in the statute's definitions of first degree murder which bars treating a finding under either theory sufficient to satisfy the mental element of the single offense. (*Schad* v. *Arizona, supra,* 501 U.S. at pp. 643-644 [115 L.Ed.2d at pp. 572-573].)

The *Schad* plurality found it impossible to "lay down any single analytical model for determining when two means are so disparate as to exemplify two inherently separate offenses." (*Schad* v. *Arizona, supra,* 501 U.S. at p. 643 [115 L.Ed.2d at p. 572].) However, it

which our Supreme Court did not require jury unanimity. (E.g., *People* v. *Chavez* (1951) 37 Cal.2d 656, 670-672 [234 P.2d 632] [jurors need not unanimously agree on the theory supporting a first degree murder conviction]; *People* v. *Nor Woods* (1951) 37 Cal.2d 584, 586 [233 P.2d 897] [jurors need not unanimously agree on the method of theft in a prosecution for larceny]; *People* v. *Failla* (1966) 64 Cal.2d 560, 567-569 [51 Cal.Rptr. 103, 414 P.2d 39] [jurors need not agree on the felony underlying a burglary charge]; *People* v. *Edwards* (1991) 54 Cal.3d 787, 824 [1 Cal.Rptr.2d 696, 819 P.2d 436] [a jury need not agree which acts constitute lying in wait to support the finding of a special circumstance].) (*People* v. *Davis, supra,* 8 Cal.App.4th at pp. 40-41.)

*Davis* concluded its analysis by examining *People* v. *Beardslee* (1991) 53 Cal.3d 68 [279 Cal.Rptr. 276, 806 P.2d 1311], where the prosecutor had asserted two theories of liability: either Beardslee fired the fatal shot or he was an aider and abettor. The court observed the unanimity instruction is required only when jurors can disagree upon which act a defendant committed and yet convict him or her of the crime.[5] Such was not the case because under the facts any juror who found Beardslee a participant would *necessarily* find him an aider and abettor; therefore, no unanimity instruction was required. (53 Cal.3d at p. 92-94.)[6]

based its holding on several conclusions: first, an indictment need not specify which overt act constitutes a committed crime, nor must jurors agree on the preliminary factual matters underlying a verdict which constitute the actus reas or mens rea element of a crime; second, there are due process limits on a Legislature's power to define crimes (i.e., a state cannot convict someone under the generic charge of "crime"); third, it is more appropriate for the Legislature, rather than the courts, to make value judgments as to whether a set of differing elements defines separate crimes or merely separate means for committing the same crime; fourth, "[i]f . . . two mental states are supposed to be equivalent means to satisfy the mens rea element of a single offense, they must reasonably reflect notions of equivalent blameworthiness or culpability, whereas a difference in their perceived degrees of culpability would be a reason to conclude that they identified different offenses altogether." (501 U.S. at p. 643 [115 L.Ed.2d at p. 573.])

[5]The defendant urged the court to reject *People* v. *Forbes* (1985) 175 Cal.App.3d 807, 816-817 [221 Cal.Rptr. 275] which first observed, "Where the evidence shows more than one act which could constitute the charged offense and the prosecution does not elect to rely on any one such act, a unanimity instruction is usually required. [Citations.] However, such instruction has uniformly been held unnecessary where a single charged offense is submitted to the jury on alternative legal theories of culpability, . . . . It is held sufficient that each juror is convinced beyond a reasonable doubt that the defendant committed the offense *as that offense is defined by statute.* [Citations.] An aider and abettor is defined by California statute as a principal in the offense equally guilty with the perpetrator. [Citations.] It follows that jurors need not unanimously agree by which statute the defendant attains his status as a principal in the crime." However, the court, in reaching its holding, found it unnecessary to address *Forbes.*

[6]Perez contends our Supreme Court had the opportunity in *Beardslee* to take a position similar to that taken in *Forbes,* but chose not to. We disagree. The Supreme Court did not

We too reject *Melendez*. Both the United States Supreme Court in *Schad* and the California Supreme Court on several occasions have held jurors need not unanimously agree on the theory supporting liability. We find *Melendez* is not supported by case law or logic. "Because statutes frequently enumerate alternatives that clearly are mere means of satisfying a single element of an offense, adoption of the . . . approach of requiring a specific verdict as to every alternative would produce absurd results." (*Schad* v. *Arizona, supra,* 501 U.S. at p. 636, fn. 6 [115 L.Ed.2d at p. 568].)

Although the conclusion in *Melendez* is a logical extension of earlier, established principles, the court failed to address a critical issue. The *Melendez* rule rewards the defendant who is guilty of more than one role in the charged crime. Under its rationale, the defendant who sits in the car and later enters the store, actually committing both acts, is not convicted if all jurors do not unanimously agree on at least one act. On the other hand, the defendant who only waits in the car or only enters the store does not have the advantage of splitting the vote. The result therefore rewards defendants who present evidence they committed more than one act, confuse the jury and then exploit that confusion when the jurors cannot agree.

The Attorney General explains this anamoly well. "Assume a robbery with two masked participants in a store, one as the gunman and one as the lookout. If one witness makes a voice identification of the defendant as the gunman who demanded money, but other evidence, such as a fingerprint, suggests the defendant was actually holding the door open as lookout, the jury would be faced with the same theories presented in this case: find the defendant was the gunman and therefore a direct perpetrator, or find he was at the door and therefore an aider and abettor. Either way he would be guilty of robbery." If 12 jurors must agree on the role played by the defendant, the defendant may go free, even if the jurors all agree defendant committed the crime. That result is absurd.

We find *Davis* the better reasoned decision. "In California it is unnecessary jurors unanimously agree on the theory of criminal culpability supporting their unanimous conclusion of guilt. We conclude the complexity of the

overrule the decision in *Forbes*, finding no instruction was required. Instead, the court held it did not need to address the issue because it found "[t]he jurors who concluded that defendant intentionally killed Patty with premeditation and deliberation necessarily would have believed that if he was not the actual killer, he intentionally encouraged and facilitated the actual killer's perpetration of first degree murder. Since the jury had to agree unanimously at least on the facts required for conviction as an aider and abettor, and for application of the special circumstance findings to a person who was not the actual killer [citation], no further unanimity was required, and the unanimity instruction was not necessary." (*People* v. *Beardslee, supra,* 53 Cal.3d at pp. 93-94.)

law and the complexity of criminal conduct make any other position so potentially instructionally difficult, and complicated, and so potentially confusing to jurors that any other rule is, as a practical matter, unacceptable. [Citations.]" (*People* v. *Davis*, *supra*, 8 Cal.App.4th at p. 44.)

As did the *Davis* court, we conclude ". . . the giving of CALJIC No. 17.01 is inappropriate in those cases where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event. We find CALJIC No. 17.01 an appropriate instruction when conviction on a single count could be based on two or more discrete criminal events. In such cases it is appropriate the jurors all agree the defendant is responsible for the same discrete criminal event. As we have noted, however, the jurors need not agree on the theory of criminality or the theory of criminal participation." (8 Cal.App.4th at p. 45.)[7]

Perez was charged with one offense, second degree robbery, based on one discrete criminal event. There is no question as to which act constituted the robbery. Witnesses testified the perpetrator entered the store, displayed a gun, took the money in the register and fled. However, there was conflicting evidence regarding which specific acts Perez committed during the robbery. In light of our conclusions above, it was not necessary jurors unanimously agree on whether Perez was the direct perpetrator or aided and abetted the robbery by driving the perpetrator to the store. Therefore, the failure to give CALJIC No. 17.01 was not erroneous.

### III.

After submitting this matter, Perez moved to vacate the submission in order to file a supplemental brief challenging the constitutionality of CALJIC No. 2.90, the standard reasonable doubt instruction, in light of the United States Supreme Court's grant of certiorari in *People* v. *Sandoval* (1992) 4 Cal.4th 155 [14 Cal.Rptr.2d 342, 841 P.2d 862] (cert. granted Sept. 29, 1993, __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40]). Although we granted the request to file supplemental briefing in order to preserve Perez's possible remedies following final determination of this issue, we find no reason to vacate the original submission of this matter. Our hands are tied on the issue. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People* v. *Smith* (1992) 9 Cal.App.4th 196, 202 [11 Cal.Rptr.2d 645].) The California Supreme Court has consistently upheld the formulation derived from Penal Code section 1096. (*People* v.

---

[7]This rationale is also consistent with our earlier decision in *People* v. *Dellinger* (1984) 163 Cal.App.3d 284 [209 Cal.Rptr. 503], where we held a jury unanimity instruction was required when there was a question of which act constituted the charged offense of murder: blunt trauma to the head or cocaine poisoning.

*Jennings* (1991) 53 Cal.3d 334, 385 [279 Cal.Rptr. 780, 807 P.2d 1009], cert. den. ___ U.S. ___ [116 L.Ed.2d 462, 112 S.Ct. 443]; *People* v. *Smith, supra,* 9 Cal.App.4th at p. 202.) Accordingly, we issue a pro forma rejection of defendant's constitutional challenge to CALJIC No. 2.90 in order that he may address it to courts with the power to act upon it.

The judgment is affirmed.

Sills, P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 12, 1994.