[No. F021341. Fifth Dist. Apr. 20, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL C. HERNANDEZ, Defendant and Appellant.

74

COUNSEL

Robert D. Platt, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Jo Graves and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

VARTABEDIAN, J.—Defendant, Michael C. Hernandez, was convicted of four counts of second degree burglary, four counts of receiving stolen property, and one count of first degree burglary. Defendant challenges only the first degree burglary (count 11)[1] and two of the second degree burglaries (counts 5 and 8). Relying on our opinion in *People* v. *Melendez* (1990) 224 Cal.App.3d 1420 [274 Cal.Rptr. 599], defendant asserts the trial court prejudicially erred in failing to give a unanimity instruction for the first degree burglary. In addition, defendant contends the trial court erred in giving CALJIC No. 2.15, possession of recently stolen property. We affirm.

FACTS

On November 17, 1993, John King locked his house and went to work. King's neighbor, Mr. Glover, saw an unfamiliar car in the alley. He went inside and told his wife. Mrs. Glover saw a car with the trunk open. The car, which contained two men, left and then returned, parking behind King's house. One of the men in the car, whom Mrs. Glover identified as defendant,

---

[1] We note the abstract of judgment describes count 11 incorrectly as receiving stolen property and lists it as the principal term. Count 11 was the first degree residential burglary and was the principal term.

carried a large case out of the backyard area of King's house and put it inside the car. The two drove off in the car. Mr. Glover also saw the two men carry out a case from King's backyard area and put it in the car.[2] Mr. Glover got binoculars and wrote down the license plate number.

King's daughter-in-law called him at work and told him the back door to his house was open and his gun cabinet was open also. King returned home and found several guns and a video camera missing from his home.

On the same day as the King burglary, Earl Leal was approached by defendant in an alley. Defendant asked Leal if he was interested in purchasing some guns. Defendant told Leal he had paid $100 for the guns and he just wanted to get his money back. Leal agreed to pay defendant $70 for some of the guns. The guns were later recovered from Leal. They were King's stolen guns.

Also that same day, defendant was interviewed by Bakersfield Police Detective Harry Scott about the King burglary. Defendant initially denied any involvement, but then told Scott that he drove the car and stayed in the car while two other persons burglarized King's home.

Defendant testified at trial that he told Detective Scott he was not involved in the burglary. Defendant claimed he stopped the car in the alley. His friends got out and threw stuff from a trash can into his car. Defendant asked them what was going on, and his friend told him to drive off. Defendant's friend gave him some guns and defendant sold some of them to Leal.

During a search of defendant's residence on November 17, 1993, law enforcement officers recovered a bevy of stolen property which additionally linked defendant to a series of recent vehicle burglaries in the Bakersfield area. We limit our further summary to the remaining challenged counts.

On November 11, 1993, Toni Torrey went to a concert at the civic auditorium. She parked her Jeep near the auditorium. When she returned, much of her personal property was missing from her Jeep. Some of her property was recovered from defendant's home. (Count 5.)

On November 13, 1993, Erica Rodgers went with her friend to a football game at Bakersfield College. She parked her car and locked it. When she returned the lock was broken. Her purse and her friend's purse were missing from the vehicle. Her purse was not recovered; her friend's purse was found in defendant's home. (Count 8.)

---

[2]Mr. Glover could not see inside the backyard from his vantage point nor could he see Mr. King's house.

Concerning the vehicle burglaries, defendant gave a statement to Bakersfield Police Officer Roger Buckles. He told Buckles that he and three others went to the civic auditorium on November 11, 1993, to break into vehicles. The group split up and broke into several vehicles. They met later and divided up their collection from the evening. Defendant did not personally break into the Jeep. (Count 5.) On November 13, 1993, the group did the same thing at Bakersfield College. (Count 8.)

Defendant testified that he did not break into any cars at the civic auditorium or at football games. He admitted being in possession of property apparently taken during these burglaries.

DISCUSSION

I.

*Jury Unanimity*

In *People* v. *Melendez, supra,* 224 Cal.App.3d 1420, 1433-1434, we held: "Where a single crime can be proven by different theories based on different acts and at least two of these theories rely on different evidence, and where the circumstances demonstrate a reasonable possibility that a juror will find one theory proven and the other not proven but that all of the jurors will not agree on the same theory, a unanimity instruction must be given."

The residential burglary count of the present case falls within the situation described by *Melendez.* Mrs. Glover identified defendant as the direct perpetrator of the crime because she saw him carry an item out of King's backyard and put it into the car. Detective Scott testified that defendant admitted driving the car for the burglaries; this was evidence of defendant's participation as an aider and abettor. Defendant testified that he did not make such an admission to Detective Scott and that he drove the car with no knowledge of the burglary. Defendant admitted selling some of the property, which he knew was stolen at the time he sold it.

Defendant asserts that *Melendez* requires a unanimity instruction, and the court's failure to give the instruction was error. The People assert that in light of subsequent Court of Appeal decisions criticizing the *Melendez* opinion, we should reexamine that opinion.

A reexamination of *Melendez* is unnecessary because the California Supreme Court has effectively overruled *Melendez* and we are bound by the

law set forth by that court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The basic premise underlying the *Melendez* holding was drawn from *United States* v. *Gipson* (5th Cir. 1977) 553 F.2d 453: "Like the 'reasonable doubt' standard, which was found to be an indispensable element in all criminal trials in *In re Winship*, 1970, 397 U.S. 358 . . . , the unanimous jury requirement 'impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue'. 397 U.S. at 364 . . . . The unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required." (*United States* v. *Gipson*, *supra*, 553 F.2d at pp. 457-458, fns. omitted.)

The other school of thought derives from the rule found in *People* v. *Sullivan* (1903) 173 N.Y. 122 [65 N.E. 989]. " 'The *Sullivan* rule takes as irrelevant any jury disagreement on subordinate issues. It matters not that jurors may disagree over the theory of the crime . . . . Nor does it matter that they disagree on the theory of participation, for example, whether there was a direct participation or aiding and abetting or coconspiracy. Nor does it matter that they disagree about the facts proving any of these theories. If each juror concludes, based on legally applicable theories supported by substantial evidence, that defendant is guilty of the charged offense, the defendant is properly found guilty even if the jurors disagree about the particular theories or facts.' (*People* v. *Davis* [(1992)] 8 Cal.App.4th [28, 34] [10 Cal.Rptr.2d 381].)" (*People* v. *Perez* (1993) 21 Cal.App.4th 214, 220 [26 Cal.Rptr.2d 691].)

In *People* v. *Perez*, *supra*, 21 Cal.App.4th 214, the appellate court rejected *Melendez* and followed the *Sullivan* rule. In doing so, the *Perez* court strongly relied on the following example: " 'Assume a robbery with two masked participants in a store, one as the gunman and one as the lookout. If one witness makes a voice identification of the defendant as the gunman who demanded money, but other evidence, such as a fingerprint, suggests the defendant was actually holding the door open as lookout, the jury would be faced with the same theories presented in this case: find the defendant was the gunman and therefore a direct perpetrator, or find he was at the door and therefore an aider and abettor. Either way he would be guilty of robbery.' If 12 jurors must agree on the role played by the defendant, the defendant may go free, even if the jurors all agree defendant committed the

crime. That result is absurd." (*People* v. *Perez, supra,* 21 Cal.App.4th at p. 222.)

The defendant in *People* v. *Santamaria* (1994) 8 Cal.4th 903 [35 Cal.Rptr.2d 624, 884 P.2d 81], was convicted of murder and robbery. The jury found the robbery-murder special circumstance to be true but found not true the allegation that defendant used a knife during the commission of the crime. The judgment was reversed on appeal. After remand, the trial court ruled that the People could not retry the knife enhancement and further ruled that the People could not retry the defendant for murder on the theory that he personally used a knife. The prosecution stated it could not proceed under this ruling. The trial court dismissed the case, and the Attorney General's petition for review was granted in the California Supreme Court.

The California Supreme Court was called upon to decide the following question: "Do collateral estoppel principles mandate that after a judgment is reversed on appeal, the original jury's finding on a sentence enhancing allegation affects retrial of a murder charge, even though the same jury *convicted* defendant of that murder?" (8 Cal.4th at p. 908.) In determining the issue, the court discussed whether identical issues were being retried and turned to California law on the issue of jury unanimity to analyze the question. The Supreme Court stated:

"It is settled that as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty. [Citations.] More specifically, the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator. [Citations.] This rule of state law passes federal constitutional muster. [Citation.]

"Defendant is not particularly troubled by this. He argues that the jury did reach a unanimous verdict; it unanimously found the knife-use allegation not true. This is correct, but is of far less significance than defendant contends. It shows only that there was a reasonable doubt in the minds of the jurors that defendant specifically used a knife. *It does not show the reverse, that the jury specifically found defendant was an aider and abettor.* Indeed, under the facts of this case, such a finding is most unlikely. The jury may merely have believed, and most likely did believe, that defendant was guilty of murder as either a personal knife user or an aider and abettor but *it may have been uncertain exactly which role defendant played.* That, too, would fully explain, and necessitate, the split verdict.

"Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as

each is convinced of guilt. Sometimes, as probably occurred here, the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other." (*People* v. *Santamaria, supra,* 8 Cal.4th at pp. 918-919, fn. omitted.)

The California Supreme Court set forth the previously quoted *Melendez*-type example from *Perez,* which ended with the appellate court finding the result of the example to be absurd. Following this, the Supreme Court stated, "Equally absurd would be to let the defendant go free because each individual juror had a reasonable doubt as to his exact role." (*People* v. *Santamaria, supra,* 8 Cal.4th at p. 920, fn. 8.)

Although the California Supreme Court did not expressly cite to or discuss *Melendez,* its strong language makes it clear it now disagrees with the result reached in *Melendez.* Thus we feel *Melendez* is no longer proper authority on the unanimity instruction.

Because *Melendez* is not the law in California, defendant's argument fails. Here the burglary was one discrete event. There was conflicting evidence as to defendant's participation in the burglary. " '. . . [T]he giving of CALJIC No. 17.01 is inappropriate in those cases where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event. We find CALJIC No. 17.01 an appropriate instruction when conviction on a single count could be based on two or more discrete criminal events. In such cases it is appropriate the jurors all agree the defendant is responsible for the same discrete criminal event. . . . [H]owever, the jurors need not agree on the theory of criminality or the theory of criminal participation.' [Citation.]" *People* v. *Perez, supra,* 21 Cal.App.4th at p. 223.)

The trial court did not err by failing to give a unanimity instruction for the first degree burglary count.

## II.

### *Possession of Stolen Property*

■ CALJIC No. 2.15 (1989 rev.) was given as part of the instructions read to the jury. As given to the jury, it provides:

"If you find that a defendant was in conscious possession of recently stolen property, the fact of such possession is not by itself sufficient to

permit an inference that the defendant is guilty of the crimes of auto burglary, receiving stolen property, or residential burglary. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.

"As corroboration, you may consider the attributes of possession—time, place and manner, that the defendant had an opportunity to commit the crime charged, the defendant's conduct, his false or contradictory statements, if any, and or other statements he may have made with reference to the property, a false account of how he acquired possession of the stolen property or any other evidence which tends to connect the defendant with the crime charged."

Defendant asserts that the instruction undercut the presumption of innocence because it permitted the jury to convict him on the basis of slight evidence.

This argument was rejected in *People* v. *Gamble* (1994) 22 Cal.App.4th 446, 454-455 [27 Cal.Rptr.2d 451]: "Appellant's further claim that CALJIC No. 2.15 violated due process by lessening the prosecutor's burden of proving every element of robbery beyond a reasonable doubt is without substance. The instruction creates only a permissive inference, one the jury could either credit or reject 'based on its evaluation of the evidence, and therefore does not relieve the People of any burden of establishing guilt beyond a reasonable doubt. [Citation.]' [Citation.] A permissive inference does not shift the prosecution's burden of proof, and violates due process 'only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.' "

Defendant contends that his possession of the property was no more probative of burglary than it was of receiving stolen property. While this may be true, it is defendant's possession, combined with his admissions that he participated in vehicle burglaries at the civic auditorium and Bakersfield College on the nights in question, that allow the instruction on this permissive inference to be given.

There was no instructional error.

## DISPOSITION

The judgment is affirmed, with the exception that we direct the trial court to correct the abstract of judgment to reflect the conviction in count 11 was

for first degree burglary and to send copies of the corrected abstract to the appropriate authorities.

Ardaiz, P. J., and Harris, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 13, 1995.