133 F.3d 1242
 98 Cal. Daily Op. Serv. 449, 98 Daily Journal
D.A.R. 2467,
98 Daily Journal D.A.R. 609
Jose Napolean SANTAMARIA, Plaintiff-Appellee,
v.
Don HORSLEY, Sheriff, Defendant-Appellant.
 No. 95-16991.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted En Banc
Sept. 26, 1997.
 Decided Jan. 16, 1998.
 
 Joan Killeen, Supervising Deputy Attorney General, San Francisco, California, for defendant-appellant.
 Lawrence A. Gibbs, Grossman & Gibbs, Berkeley, California, for plaintiff-appellee.
 Before: BROWNING, WALLACE, PREGERSON, KOZINSKI, THOMPSON, TROTT, FERNANDEZ, RYMER, KLEINFELD, HAWKINS and THOMAS, Circuit Judges.
 Opinion by Judge WALLACE; Concurrence by Judge FERNANDEZ; Concurrence by Judge RYMER; Concurrence by Judge KOZINSKI; Dissent by Judge PREGERSON.
 WALLACE, Circuit Judge:
 
 
 1
 Sheriff Don Horsley of San Mateo County, California, (State) appeals from the district court's issuance of a writ of habeas corpus in favor of Jose Napolean Santamaria. The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. §§ 1291 and 2253. Because Santamaria argues that retrial will violate his constitutional rights, we may review his petition even though it is pretrial. See 28 U.S.C. § 2241(c)(3); Braden v. Judicial Circuit Court of Ky., 410 U.S. 484, 488-90 (majority) and 503 (Rehnquist, J., dissenting), 93 S.Ct. 1123, 1126-27, 1133-34, 35 L.Ed.2d 443 (1973). Beyond that, the State has not asked us to abstain or demand further exhaustion on Santamaria's part, nor do we see any other basis for deferring a decision. Therefore, we address the merits of Santamaria's petition. We granted rehearing en banc to determine whether to overrule Pettaway v. Plummer, 943 F.2d 1041 (9th Cir.1991) (Pettaway). We reverse.
 
 
 2
 * In February 1989, a California jury found Santamaria guilty of murder and robbery, but found "not true" a sentence enhancement charge, under California Penal Code § 12022(b), that he personally used a deadly weapon (a knife) in the commission of a felony. See People v. Santamaria, 8 Cal.4th 903, 909, 35 Cal.Rptr.2d 624, 884 P.2d 81 (1994) (Santamaria). A state appellate court reversed the murder conviction, holding that an 11-day continuance during jury deliberations was prejudicial error. Id. at 909, 35 Cal.Rptr.2d 624, 884 P.2d 81, citing People v. Santamaria, 229 Cal.App.3d 269, 280 Cal.Rptr. 43 (1991).
 
 
 3
 On remand, Santamaria filed a motion to, among other things, "preclude prosecution's reliance on theory adjudicated in defendant's favor at first trial." Id. The trial court granted the motion, ruling that the collateral estoppel component of the Double Jeopardy Clause barred the prosecution "from retrying the defendant on the theory that he personally used the knife during the killing." Id. The State subsequently stated that it was unable to proceed in light of the court's ruling, and the case was dismissed. The California Court of Appeal affirmed the trial court's dismissal of the case, but the California Supreme Court reversed. That court held "that collateral estoppel does not apply," id. at 922, 35 Cal.Rptr.2d 624, 884 P.2d 81, and remanded the case to the trial court with instructions to reinstate the charges.
 
 
 4
 Santamaria then filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of California. The district court held that our decision in Pettaway compelled the conclusion that the Double Jeopardy Clause bars the State from arguing at retrial that Santamaria used a knife to commit murder. Therefore, the district court issued the writ. A panel of this court affirmed the district court, holding that Pettaway controlled the outcome of this case. Santamaria v. Horsley, 110 F.3d 1352, 1357 (9th Cir.1997).
 
 
 5
 The State, Santamaria, and the California Supreme Court agree that this case is factually indistinguishable from Pettaway, and that the only substantial legal issue before us is the continuing vitality of that decision. See Santamaria, 8 Cal.4th at 923, 35 Cal.Rptr.2d 624, 884 P.2d 81 ("People v. Pettaway ... involved virtually the same issue and procedural posture as this case, except that there the weapon enhancement that the jury found not true was for use of a firearm, not a knife.").
 
 
 6
 We review de novo a district court's decision to issue a writ of habeas corpus. Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). The habeas corpus provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (amendments to 28 U.S.C. §§ 2241-2255) do not apply retroactively to this appeal. Lindh v. Murphy, --- U.S. ----, ----, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).
 
 II
 
 7
 At the outset, we identify what this case is not about. Santamaria does not argue that his retrial for murder is barred by the Double Jeopardy Clause of the Fifth Amendment made applicable to the States through the Fourteenth Amendment. Nor does the State argue that it should be permitted to seek the weapon enhancement on retrial. Nor are we concerned with whether collateral estoppel should be limited to subsequent trials, as opposed to retrials; we assume without deciding that the doctrine does apply to retrials. The sole issue we address is whether the jury's verdict of "not true" on the use of a knife on a weapon enhancement charge precludes the State from presenting evidence and arguing in a retrial that Santamaria used the knife to commit murder.
 
 A.
 
 8
 Collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (Ashe). As the Court has instructed:
 
 
 9
 [T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."
 
 
 10
 Id. at 444, 90 S.Ct. at 1194.
 
 
 11
 In Ashe, several bandits robbed six men playing poker. Ashe was tried and acquitted for robbing one of the six men. The State then successfully tried him for robbing another victim. Because the robbery of the second poker player was a separate crime, the Double Jeopardy Clause did not bar the second trial. 397 U.S. at 437-40, 446, 90 S.Ct. at 1190-92, 1195. However, the Court reversed, holding that the Double Jeopardy Clause contained a collateral estoppel element that barred relitigation of any ultimate fact necessarily decided in an earlier trial. Id. at 442-43, 445, 90 S.Ct. at 1193-94, 1195. Based on an evaluation of the record, the Court held that the only contested issue was identity, and therefore the acquittal in the first trial indicated that the State had failed to prove beyond a reasonable doubt that Ashe was one of the bandits. Id. at 445, 90 S.Ct. at 1195. The State was therefore barred by the doctrine of collateral estoppel from trying Ashe for the robbery of any of the other poker players, since identity would be an ultimate issue in each such trial.
 
 
 12
 In Pettaway, following Ashe, we held that a jury finding of "not true" on a California sentence-enhancement charge implicates the collateral estoppel component of the Double Jeopardy Clause. 943 F.2d at 1047-48. We reasoned that if a defendant's conviction is subsequently reversed on appeal, a "not true" determination bars the prosecution from relying at retrial on any theory of the offense factually inconsistent with it. In Pettaway, the jury found the defendant guilty of murder, but found "not true" two sentence enhancement charges that he personally used a firearm and personally inflicted great bodily injury. The murder conviction was reversed on appeal, and at retrial the State proposed to introduce evidence tending to show that Pettaway personally shot the victim. We held that a retrial on that theory would be inconsistent with the first jury's "not true" determinations and would therefore violate the Double Jeopardy Clause.
 
 B.
 
 13
 The California Supreme Court's subsequent clarification of state law in Santamaria has shown that Pettaway ascribed too much significance to the jury's "not true" response on the weapon enhancement determination. We recognize that "[t]he preclusive effect of the jury's verdict ... is a question of federal law which we must review de novo." Schiro v. Farley, 510 U.S. 222, 232, 114 S.Ct. 783, 790, 127 L.Ed.2d 47 (1994). However, Santamaria is particularly relevant because it sets forth the state law requirements for proving murder. See, e.g., Wainwright v. Goode, 464 U.S. 78, 84, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983) (per curiam) ("[T]he views of the state's highest court with respect to state law are binding on the federal courts.").
 
 
 14
 Pettaway held that since the jury convicted Pettaway of murder but rejected the weapons enhancement charge, "[t]he jury necessarily decided that Pettaway did not fire the fatal shots." 943 F.2d at 1046. Thus, Pettaway restricted the State to an aiding and abetting theory. This conclusion is incorrect.
 
 
 15
 There is no dispute that the jury determination on the weapons enhancement issue properly barred the State from seeking the enhancement on retrial, because the ultimate fact of whether the State had proven the weapon use beyond a reasonable doubt for the enhancement had been determined already. But this determination did not necessarily mean that the jury had therefore found Pettaway guilty of murder only as an aider and abettor. First, we must bear in mind that "an acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt." United States v. Watts, --- U.S. ----, ----, 117 S.Ct. 633, 637, 136 L.Ed.2d 554 (1997) (per curiam) (Watts), quoting United States v. Putra, 78 F.3d 1386, 1394 (9th Cir.1996) (Wallace, J., dissenting). Second, California allows a jury to convict a defendant for murder without unanimous agreement as to whether he was guilty as an aider and abettor or as a direct perpetrator. Santamaria, 8 Cal.4th at 918, 35 Cal.Rptr.2d 624, 884 P.2d 81; see generally Schad v. Arizona, 501 U.S. 624, 630-31, 111 S.Ct. 2491, 2496-97, 115 L.Ed.2d 555 (1991) (opinion of Justice Souter, joined by Chief Justice Rehnquist and Justices Kennedy and O'Connor) (upholding Arizona's procedure of allowing a jury to convict a defendant of first-degree murder without agreement as to a particular theory). Thus, California does not require the individual jurors to choose a particular theory of murder beyond a reasonable doubt, "so long as each is convinced of guilt." Santamaria, 8 Cal.4th at 919, 35 Cal.Rptr.2d 624, 884 P.2d 81.
 
 
 16
 Pettaway's two verdicts may be harmonized by concluding that the jury found that Pettaway was guilty as an aider and abettor. However, it is also conceivable that all twelve jurors were convinced beyond a reasonable doubt that Pettaway played some role, either as the shooter or as an aider and abettor, without ascertaining exactly which role. We have no way of knowing, because these alternatives (and perhaps others) are rationally consistent with the jury's verdict in that case.
 
 
 17
 Santamaria points out that the jury was never instructed that it did not need to reach agreement as to his particular role in the murder, and hence, could not have relied upon this "either/or" theory. However, he bears the burden of showing "that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Dowling v. United States, 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990) (Dowling). Furthermore, he must convince us that no "rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe, 397 U.S. at 444, 90 S.Ct. at 1194, quoting Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv. L.Rev. 1, 38-39.
 
 
 18
 This he did not and cannot do. The State's evidence in this case came largely by way of accomplice Anthony Nubla, who testified that he saw Santamaria hugging the victim's neck and stabbing him. Santamaria, 8 Cal.4th at 909, 35 Cal.Rptr.2d 624, 884 P.2d 81. Santamaria, on the other hand, testified that on the day of the murder, he had driven a friend to pick up a paycheck; he denied any involvement in the crime. People v. Santamaria, 229 Cal.App.3d at 274, 280 Cal.Rptr. 43. By convicting him of murder, the jury obviously rejected Santamaria's alibi. The jury could have had doubts about the complete veracity of Nubla's testimony, but the thrust of the evidence was that Santamaria was the active murderer, and there was little, if any, evidence that Santamaria aided and abetted Nubla in the killing. We cannot say that the split verdict, even in the absence of a specific "either/or" instruction, indicates that a rational jury could only conclude that Nubla had not only perjured himself but also was the sole active participant in the murder.
 
 
 19
 Pettaway also held that the possibility that the second jury could conclude that Pettaway shot the victim himself, thereby reaching a conclusion "directly contrary" to that of the first jury, would be "abhorrent to the principles underlying the Double Jeopardy Clause." 943 F.2d at 1047. This conclusion is erroneous as well. The second jury, if it convicted Pettaway on retrial based partially (or even solely) on evidence that he shot the victim, would be concluding only that Pettaway committed murder. See Santamaria, 8 Cal.4th at 923 n. 10, 35 Cal.Rptr.2d 624, 884 P.2d 81 ("The jury returns a verdict of guilt or innocence of the charge, not a verdict on any particular theory.").
 
 
 20
 Because there is more than one rational conclusion that can be drawn from the first jury's verdict, Pettaway erred in restricting the State on retrial solely to the aiding and abetting theory. See, e.g., Ashe, 397 U.S. at 444 & n. 9, 90 S.Ct. at 1194 & n. 9 (holding that the question is whether a rational jury could have based its decision on any other conclusion). We therefore hold that the jury's determination on the weapon enhancement issue cannot restrict the State to retrying Santamaria solely on an aiding and abetting theory of murder.
 
 C.
 
 21
 We next address whether the State should be precluded from retrying Santamaria on the theory that he personally used the knife to kill the victim, while allowing retrial on the theories that he aided and abetted the murder, or that he was a direct participant other than using the knife in the murder. See, e.g., Santamaria, 8 Cal.4th at 932-33, 35 Cal.Rptr.2d 624, 884 P.2d 81 (Mosk, J., concurring and dissenting).
 
 
 22
 To resolve this complex issue, we consider whether the use of a knife is an ultimate fact for the purposes of a murder conviction under California law. If it is not, then collateral estoppel will not preclude the government from introducing evidence that Santamaria stabbed the victim, because collateral estoppel does not "exclude in all circumstances ... relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." Dowling, 493 U.S. at 348, 110 S.Ct. at 672; see also United States v. Seley, 957 F.2d 717, 723 (9th Cir.1992) ("If an act that could have been proved to a lesser degree than that required for conviction is for some reason probative in a subsequent trial, it need not be excluded because of the prior acquittal."); cf. Watts, --- U.S. at ----, 117 S.Ct. at 637 (allowing the consideration at sentencing of conduct for which a defendant has been acquitted because of the lower burden of proof at sentencing).
 
 
 23
 In Dowling, the defendant was tried for the robbery of a bank where the robber had worn a ski mask and carried a small handgun. The government sought to introduce evidence that, two weeks after the bank robbery, Dowling attempted to rob a woman, while wearing a ski mask and carrying a small handgun. Dowling, 493 U.S. at 344, 110 S.Ct. at 670. Dowling, however, had been acquitted of this robbery, and he argued that the government should be collaterally estopped from introducing the evidence.
 
 
 24
 The Court held that "unlike the situation in Ashe v. Swenson, the prior acquittal did not determine an ultimate issue in the present case." 493 U.S. at 348, 110 S.Ct. at 672. The difference was that in Ashe, the first jury's acquittal "could only have meant that the jury was unable to conclude beyond a reasonable doubt that the defendant was one of the bandits." Id. In the second trial, the government would still have to prove beyond a reasonable doubt that Ashe was one of the robbers, a determination that would be directly contrary to the verdict in the first trial. Id. On the other hand, in Dowling, the government did not have to establish beyond a reasonable doubt that Dowling was the person who entered the second victim's home. Thus, collateral estoppel was not applicable "[b]ecause a jury might reasonably conclude that Dowling was the masked man who entered [the second victim's] home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial." Id. at 348-49, 110 S.Ct. at 672-73.
 
 
 25
 In this case, the State failed to prove beyond a reasonable doubt the ultimate fact that Santamaria used a knife for the weapon enhancement in the first trial. However, to convict him of murder under California law, the State is not required to prove beyond a reasonable doubt that Santamaria used a knife. Santamaria, 8 Cal.4th at 918-19, 35 Cal.Rptr.2d 624, 884 P.2d 81. Therefore, the use of a knife is not an ultimate fact for the retrial, and the State cannot be precluded from presenting evidence that Santamaria stabbed the victim.
 
 
 26
 There is at least a theoretical possibility that in the second trial all twelve jurors could convict Santamaria based on individual determinations that the State proved beyond a reasonable doubt that he used the knife, resulting in a verdict contrary to that rendered by the first jury. See Santamaria, 8 Cal.4th at 934, 35 Cal.Rptr.2d 624, 884 P.2d 81 (Mosk, J., concurring and dissenting) (arguing that the jury should be instructed "only that it could not find that defendant was guilty as a principal as a direct and active perpetrator solely through his personal use of a knife "). But even if we should rest our decision upon such a theoretical possibility, such a verdict would be directly contrary to that of the first jury only if no juror would also find Santamaria guilty under either of the other two theories of murder. Because California has chosen to allow murder to be proven without unanimous agreement as to the particular theory, any juror who thought that the State had proven beyond a reasonable doubt that Santamaria used a knife to kill the victim would necessarily also conclude that the State had proven beyond a reasonable doubt that Santamaria had played a culpable role in killing the victim.
 
 D.
 
 27
 Santamaria argues that the "either/or" theory violates the Sixth Amendment and is logically incoherent. Santamaria's Sixth Amendment argument relies on Mitchell v. Prunty, 107 F.3d 1337, 1339 n. 2 (9th Cir.) ("Special findings, by contrast, are dispositive of the questions put to the jury. Having agreed to the questions, the government cannot now ask us to ignore the answers; to do so would be a clear violation of petitioner's Sixth Amendment rights."), cert. denied, --- U.S. ----, 118 S.Ct. 295, 139 L.Ed.2d 227 (1997). In Mitchell, a California state jury convicted Mitchell of second-degree murder, but found a weapon enhancement to be not true and rendered a special verdict that he did not drive the car that ran over the victim. Id. We reviewed the sufficiency of the evidence to support Mitchell's conviction only under an aiding and abetting theory. Id. at 1340.
 
 
 28
 Mitchell concerned sufficiency of the evidence, not collateral estoppel. It, however, shared Pettaway's flawed premise that if the jury returned a not true verdict on a weapon enhancement question but also returned a murder conviction, it must have concluded that the defendant aided and abetted. For the reasons we have discussed earlier, that premise is inconsistent with the substantive California state law. To the extent Mitchell is inconsistent with this opinion, we overrule it.
 
 
 29
 Finally, Santamaria has not convinced us that the "either/or" theory is logically incoherent. To begin with, the requirements for proving murder are entirely a matter of state law so long as they are not constitutionally infirm, an issue that has been essentially resolved here by Schad.
 
 
 30
 In any event, the fact that the State failed to prove beyond a reasonable doubt in the first trial that Santamaria used a knife does not therefore mean that the State logically can prove murder only by showing that he aided and abetted. The State's burden under the "either/or" theory is to prove beyond a reasonable doubt that Santamaria used the knife or aided and abetted, but it can meet this burden even if it fails to prove beyond a reasonable doubt that he used the knife and it fails to prove beyond a reasonable doubt that he aided and abetted, so long as the jury is convinced beyond a reasonable doubt that he was culpably involved in the killing.
 
 
 31
 Indeed, the California Supreme Court persuasively points out that the true logical incoherence lies in Santamaria's position. Requiring the State to prove either direct perpetration or aiding and abetting beyond a reasonable doubt could result in acquittal in a situation where the jury is convinced beyond a reasonable doubt that two co-defendants committed a crime, but is not sure beyond a reasonable doubt as to which defendant was the direct perpetrator and which was the aider and abettor. Santamaria, 8 Cal.4th at 920 n. 8, 35 Cal.Rptr.2d 624, 884 P.2d 81, quoting People v. Perez, 21 Cal.App.4th 214, 222, 26 Cal.Rptr.2d 691 (1993).
 
 
 32
 Moreover, contrary to Santamaria's assertion, the "either/or" theory does not "spell the end for the doctrine of collateral estoppel after a special verdict adverse to the state." As pointed out in Dowling and Seley, preclusive effect can be given to special verdicts on ultimate facts in subsequent relitigation where the burden of proof remains the same. Thus, had identity been at issue, and had there been a special verdict returned with respect to identity, collateral estoppel might well bar retrial.
 
 
 33
 In conclusion, we overrule Pettaway. We reverse the district court's issuance of the writ of habeas corpus.
 
 
 34
 REVERSED.
 
 FERNANDEZ, Circuit Judge, concurring:
 
 35
 I concur in the majority opinion but with a certain degree of discomfort. As an intellectual and analytical matter, I believe that Pettaway v. Plummer, 943 F.2d 1041 (9th Cir.1991), was essentially sound. It precluded the State from attempting to prove the defendant guilty solely on the theory that he was the direct perpetrator of a shooting offense, when the State said that was all it could possibly prove. See id. at 1047. As the State told the court, "it could suggest no person Pettaway might have aided and abetted." Id. To a somewhat lesser extent, that is the same position that the State takes here, and that it took when Santamaria was before the California Supreme Court. See People v. Santamaria, 8 Cal.4th 903, 910, 884 P.2d 81, 82, 35 Cal.Rptr.2d 624, 625 (1994). (Santamaria I). Indeed, as the majority opinion indicates, the State says that this case and Pettaway are on all fours.
 
 
 36
 I also believe that California Supreme Court Justice Mosk's dissent was correct as an analytical matter. See Santamaria I, 8 Cal.4th at 927-35, 884 P.2d at 94-99, 35 Cal.Rptr.2d at 637-42. Perhaps I should also say that philosophically and theoretically his opinion and Pettaway struck the right note.
 
 
 37
 However, I concur in the majority opinion because, as Justice Mosk pointed out, it is generally true that the correct approach "yields little real benefit to [the] defendant." Id. at 933, 884 P.2d at 98, 35 Cal.Rptr.2d at 641. On reflection, it is clear that under the correct approach all of the evidence of the killing could come in. The jury would then have to be instructed that it could convict if it determined that the defendant had aided and abetted a murder, or if it was unsure whether he was the direct perpetrator of a murder or was just an aider and abettor. However, the jury would also have to be told that it could not convict the defendant on the theory that he was the direct perpetrator.[1] In other words, the jury would have to be told that if it thought that the defendant was the worst participant possible, it could not convict him. To one who likes to solve koans, that might be all right. But to one who cares about having the legal system look as rational as it usually is, it is a dreary prospect. Pity the poor trial judge who would have to so instruct the jury while keeping a straight face!
 
 
 38
 Thus, it seems to me that we are driven back to the Supreme Court's warning about the use of collateral estoppel in the double jeopardy area, that is, "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Analytics, philosophy and theory cannot parry the allonge of realism and rationality, and must fall mortally wounded. Pettaway and Justice Mosk's view must fall with them. The Constitution's collateral estoppel emanation cannot be used here.
 
 
 39
 Thus, I concur.
 
 RYMER, Circuit Judge, concurring:
 
 40
 I concur in Judge Wallace's opinion, but for the additional reason that, at the end of the day, it would be unrealistic and confusing to restrict the jury on retrial by instructing that the jury could not find Santamaria guilty as a principal as a direct and active perpetrator solely through his personal use of a knife. To do so (as Justice Mosk's analysis would require) strikes me as making no practical sense. Therefore, to hold that Santamaria may be retried on the murder charge comports with the Supreme Court's admonition that the collateral estoppel component of double jeopardy be applied with "realism and rationality." Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).
 
 
 41
 KOZINSKI, Circuit Judge, concurring.
 
 
 42
 I agree that Pettaway v. Plummer, 943 F.2d 1041 (9th Cir.1991), was wrongly decided, but on very different grounds than the majority. As the opinion notes, "Santamaria does not argue that his retrial for murder is barred by the Double Jeopardy Clause.... The sole issue we address is whether the jury's verdict ... precludes the State from presenting evidence and arguing [a theory] in a retrial[.]" Maj. op. 1244. Because Santamaria may be retried, the state does not violate his constitutional rights by detaining him for that purpose. Since Santamaria's detention does not violate the Constitution, there is no basis for invoking the power of federal habeas corpus at this time. See 28 U.S.C. § 2254(a).
 
 
 43
 While there is no caselaw directly on point, we have solid authority in the closely analogous context of interlocutory appeals in federal prosecutions. When a district court denies a defendant's motion to dismiss the indictment based on double jeopardy, the defendant may appeal immediately. See Abney v. United States, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041-42, 52 L.Ed.2d 651 (1977). This is because a double jeopardy claim implicates more than a defendant's right not to be twice convicted; it implicates his right not to endure a second trial at all-even one that ends in an acquittal. See id. at 661-62, 97 S.Ct. at 2041-42. But a defendant who is subject to retrial even if he prevails on his collateral estoppel claim may not bring an interlocutory appeal. Rather, he must stand trial, object to the evidence and then raise the issue on appeal following conviction. See United States v. Powell, 632 F.2d 754, 758 (9th Cir.1980). Accord United States v. Head, 697 F.2d 1200, 1205 (4th Cir.1982); United States v. Mock, 604 F.2d 336, 340 (5th Cir.1979). Such claims are treated precisely like other pretrial claims for suppression of evidence; that they are based on collateral estoppel, rather than, say, a violation of the Fifth Amendment, makes no difference.
 
 
 44
 This distinction applies with equal, perhaps greater, force to a case like ours where pretrial federal intervention impedes the orderly processes of the state courts. When a petitioner claims he is entitled to avoid retrial altogether, he may seek immediate federal habeas because the retrial itself would cause irreparable constitutional harm. But where he merely disputes what evidence may be admitted during retrial, his constitutional claim does not arise until he suffers a conviction based on the disputed evidence.
 
 
 45
 Pettaway acknowledged the rule of Powell, Head and Mock, see Pettaway, 943 F.2d at 1046, but concluded that petitioner could bring a pretrial habeas petition anyway because the prosecution had no other evidence on which to base a conviction. Id. at 1047. This is not persuasive. Whether the state will produce other evidence at trial has no bearing on whether petitioner suffers irreparable constitutional harm by going to trial. If, for example, the state court rejects a petitioner's claim that his confession was coerced, he may not bring an immediate habeas petition to forestall introduction of that evidence, even if the prosecution admits it has nothing else. If petitioner is convicted, his constitutional claim can be vindicated by post-conviction habeas relief. It makes no difference that Santamaria's claim of exclusion is based on collateral estoppel rather than more familiar constitutional grounds. Pettaway erred in asserting federal jurisdiction before retrial. By deciding Santamaria's claim on the merits, the majority today follows down the same garden path.
 
 
 46
 The majority disposes of the jurisdictional problem in a terse sentence: "Because Santamaria argues that retrial will violate his constitutional rights, we may review his petition even though it is pretrial. See 28 U.S.C. § 2241(c)(3); Braden v. Judicial Circuit Court of Ky., 410 U.S. 484, 488-90 (majority) and 503 (Rehnquist, J., dissenting), 93 S.Ct. 1123, 1126-27, 1133-34, 35 L.Ed.2d 443 (1973)." Maj. op. 1243-44. But the majority elsewhere admits that "Santamaria does not argue that his retrial for murder is barred by the Double Jeopardy Clause[.]" Id. at 1244. I have a hard time reconciling these two sentences from the majority opinion. Perhaps the majority is saying that federal habeas will lie whenever a state prisoner argues that he will suffer a constitutional deprivation during an upcoming state trial. But a prisoner's prediction that he will suffer constitutional harm during a trial that has not yet taken place has never been a sufficient basis for bringing a pretrial habeas petition; were it otherwise, every prisoner who claims that admission of a confession will violate his right not to incriminate himself would be entitled to immediate review of that claim on federal habeas.
 
 
 47
 Braden succinctly summarized what was at stake there: "Petitioner does not ... seek at this time to litigate a federal defense to a criminal charge, but only to demand enforcement of the Commonwealth's affirmative constitutional obligation to bring him promptly to trial." Id. at 489-90, 93 S.Ct. at 1126-27. The majority in Braden held that petitioner's right to a prompt trial could not be vindicated in a post-trial habeas petition because, at that point, the time for a prompt trial would have long passed. See id. at 490-91, 93 S.Ct. at 1127-28.. Braden, then, stands for the unremarkable proposition that where a constitutional right would be lost if not raised immediately, it may be raised immediately. This is entirely consistent with the double jeopardy line of cases. More curious than the majority's reliance on Braden is its citation to the dissent, as if to suggest that the entire Braden Court would endorse assertion of jurisdiction in our case. Since Chief Justice Rehnquist was arguing that even Braden's claim could not be raised pretrial, see id. at 507-08, 93 S.Ct. at 1135-36, I suspect he will be surprised to find himself drafted as supporting the expansive view of jurisdiction taken by the majority today.
 
 
 48
 As for Pettaway's substantive analysis, I am less convinced than the majority that it is wrong. For the reasons explained by Judge Pregerson in his dissent, and Justice Mosk in People v. Santamaria, 8 Cal.4th 903, 927, 35 Cal.Rptr.2d 624, 884 P.2d 81 (1994) (Mosk, J., dissenting in part), I have a lot of trouble concluding that the state Supreme Court can so easily finesse the Ashe problem. But, as we lack jurisdiction to consider the matter, I decline to resolve it. I would simply overrule Pettaway in all respects, leaving the substantive issue to be decided in a future case when it is presented on a full record following retrial and conviction.
 
 
 49
 PREGERSON, Circuit Judge, dissenting, joined by Circuit Judges HAWKINS and THOMAS.
 
 
 50
 A state trial jury found Jose Napolean Santamaria guilty of murder and robbery. The same jury then addressed sentencing enhancement based on the state's claim that Santamaria had personally used a knife to commit the murder. After being instructed that the state must prove this claim beyond a reasonable doubt, the jury unanimously responded that the claim was "not true."
 
 
 51
 The majority seems entirely comfortable with the possibility that a second jury may be asked this same question and come to an entirely different conclusion. A fundamental constitutional doctrine meant to give prosecutive authorities one full, fair opportunity to prove its claims is thus read to give the state a second bite at the apple.
 
 
 52
 Pettaway v. Plummer, 943 F.2d 1041 (9th Cir.1991), would preclude the prosecution from arguing at a retrial that Santamaria personally used a knife to commit murder. I submit that Pettaway was decided correctly and should not be overturned.
 
 I.
 
 53
 A defendant bears the burden to show that "the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Dowling v. United States, 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990). In making this determination, a court should "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (emphasis added) (internal quotations omitted). Moreover, "[t]he inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Id. (internal quotations omitted). And the court should bear in mind that the rule of collateral estoppel is "not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." Id.
 
 
 54
 The majority opinion "overrules" Pettaway and in doing so concludes that the jury's unanimous "not true" finding on the sentence enhancement charge did not necessarily mean that it found that Pettaway only aided and abetted another person's gun use. In coming to this conclusion, the majority reasons that the "not true" finding could also mean that the jury found, under the "either-or" theory, that Pettaway either directly used the gun or aided and abetted the person who did.
 
 
 55
 The majority's imaginative approach might carry water except that Pettaway's jury was never instructed on the "either-or" theory-as was the case with Santamaria's jury. The "either-or" theory permits the prosecution to obtain convictions when it is clear that two or more parties were involved in the commission of a crime, yet, the prosecution does not have evidence to prove, beyond a reasonable doubt, the specific role that each played. See Santamaria, 8 Cal.4th at 919 n. 8, 35 Cal.Rptr.2d 624, 884 P.2d 81 ("either-or" theory necessary in case where jury cannot determine specific roles played by two masked participants in a robbery) (citing People v. Perez, 21 Cal.App.4th 214, 222, 26 Cal.Rptr.2d 691 (1993)).
 
 
 56
 This dilemma did not exist in Pettaway, where the prosecution conceded that "at all times [its] theory of prosecution at [the first trial] and even now [at retrial] would be that [Pettaway] shot and killed Karen Taylor." Pettaway, 943 F.2d at 1044 (internal quotations omitted).[1] Similarly, in Santamaria's case, the prosecution admitted that it had "no other theory of prosecuting this murder; that is we have no evidence that the defendant was anything but the stabber...." Santamaria, 8 Cal.4th at 929, 35 Cal.Rptr.2d 624, 884 P.2d 81.
 
 
 57
 In assessing the Santamaria case, the majority opinion concludes: "We cannot say that the split verdict, even in the absence of a specific 'either-or' instruction, indicates that a rational jury could only conclude that [Anthony Nubla, the prosecution's witness who was involved in the crimes,] had not only perjured himself [when he said that Santamaria was the stabber] but also [that Nubla] was the sole active participant in the murder." Majority Opinion at 1246 (emphasis added).[2] But I suggest that the jury would not necessarily have concluded that Nubla was the sole participant in the crime when it found that the prosecution failed to prove that Santamaria used a knife to commit murder.
 
 
 58
 The jury's "not true" finding does not necessarily preclude the possibility that it concluded that Santamaria was a direct perpetrator by strangling the victim or by running him over with Nubla's car when it convicted him of murder. Santamaria, 8 Cal.4th at 934, 35 Cal.Rptr.2d 624, 884 P.2d 81. Thus, the jury's "not true" finding does not necessarily mean that the jury thought that Nubla was the sole direct perpetrator of the crime. It only means that Santamaria was not the stabber.
 
 
 59
 As the above discussion indicates, the juries in both Pettaway and Santamaria did "necessarily decide" that the defendants in these two cases were aiders and abettors only to the extent that they did not personally use a hand held weapon to commit murder.
 
 II.
 
 60
 The majority further holds that the prosecution may introduce evidence to show that Santamaria used a knife to commit murder because "knife use" is not an ultimate fact required to prove the crime of murder. The majority explains that: "If an act that could have been proved to a lesser degree than that required for conviction is for some reason probative in a subsequent trial, it need not be excluded because of the prior acquittal." Majority Opinion at 1247 (citing United States v. Seley, 957 F.2d 717, 723 (9th Cir.1992)). Thus, the majority concludes that because knife use need not be proved beyond a reasonable doubt to prove murder, the prosecution can relitigate knife use on retrial because it is not an "ultimate fact."
 
 
 61
 However, as California Supreme Court Justice Stanley Mosk pointed out in his dissent in Santamaria, "personal use of a knife is a necessary fact for the unlawful-act element of the crime of murder insofar as guilt is predicated on a theory dependent thereon-in this case, on a theory that defendant was a principal as a direct and active perpetrator solely through his personal use of a knife." Santamaria, 8 Cal.4th at 932, 35 Cal.Rptr.2d 624, 884 P.2d 81 (emphasis added).
 
 
 62
 Moreover, the majority opinion does not apply collateral estoppel with "realism and rationality" when it allows the prosecution to relitigate the issue whether Santamaria personally used a knife to commit murder based on the ephemeral possibility that the jury on retrial may decide that the defendant is guilty of murder resulting from knife use under the "either-or" theory. Here, the prosecution states unequivocally that the available evidence only supports a theory that the defendant was not an aider and abettor but directly used the knife to commit murder. The prosecution thus admits that it will proceed under the theory that the defendant directly used the knife, and implicitly, will not proceed on the "either-or" theory regarding knife use because the prosecution concedes that it will not seek to prove that Santamaria was an aider or abettor.
 
 
 63
 While the "either or" theory is an option available under California law for cases where it is unclear which of two or more defendants played a specific role in a crime, this option should not be used as a ploy to deny Santamaria the right to be protected under the double jeopardy clause when realism and rationality dictate that the "either-or" theory is inapplicable to his case.
 
 
 64
 For the reasons stated above, I respectfully dissent.
 
 
 
 [1]
 Again, it is important to recognize that the State in Pettaway, and probably here, indicated that the only thing it had any evidence of or could prove was that the defendant was the direct perpetrator
 
 
 [1]
 The prosecution further stated that "it could not proceed on any other theory, because it could suggest no person Pettaway might have aided and abetted." Id. at 1047
 
 
 [2]
 "Anthony Nubla pled guilty to being an accessory to the murder and agreed to cooperate with the prosecution." Santamaria, 8 Cal.4th at 908-909, 35 Cal.Rptr.2d 624, 884 P.2d 81