**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES KENDELL WILKINSON,
  *Petitioner-Appellee*,

v.

DOUG GINGRICH, Orange County
Probation,
  *Respondent-Appellant*.

No. 13-56952

D.C. No.
8:12-cv-01441-
GAF-FFM

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
July 7, 2015—Pasadena, California

Filed September 3, 2015
Amended November 3, 2015

Before: William A. Fletcher, Richard A. Paez,
and Marsha S. Berzon, Circuit Judges.

Order;
Opinion by Judge W. Fletcher

# SUMMARY[*]

## Habeas Corpus

The panel filed an amended opinion, denied a petition for panel rehearing, and denied on behalf of the court a petition for rehearing en banc, in a case in which the panel affirmed the district court's judgment granting James Kendell Wilkinson's habeas corpus petition challenging his conviction for perjury for testifying in a traffic court proceeding that he was not the driver of a car that had been stopped for speeding.

The State of California brought the perjury prosecution after Wilkinson was acquitted of the speeding offense. The panel agreed with the district court that the state appellate court unreasonably applied *Ashe v. Swenson*, 397 U.S. 436 (1970), when it held that Wilkinson's acquittal in traffic court did not bar the subsequent perjury prosecution. The panel held that the traffic court actually and necessarily decided, in Wilkinson's favor, an issue that was critical to both the traffic court and perjury proceedings—that Wilkinson was not the driver of the speeding car—and that the State was therefore precluded by the Double Jeopardy Clause from bringing the perjury prosecution.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Peter Quon, Jr. (argued) and Kevin R. Vienna, Supervising Deputy Attorneys General; Office of the Attorney General, San Diego, California, for Respondent-Appellant.

Hilary Potashner, Acting Federal Public Defender; K. Elizabeth Dahlstrom (argued), Deputy Federal Public Defender, Office of the Federal Public Defender, Santa Ana, California, for Petitioner-Appellee.

## ORDER

The opinion filed on September 3, 2015, and published at 800 F.3d 1062, is hereby amended and replaced by the amended opinion filed concurrently with this order. With these amendments, all judges on the panel have voted to deny the petition for panel rehearing. The petition for panel rehearing is DENIED. The petition for rehearing en banc was circulated to the judges of the court, and no judge requested a vote for en banc consideration. The petition for rehearing en banc is therefore DENIED. Fed. R. App. P. 35. No further petitions for rehearing or rehearing en banc will be entertained.

## OPINION

W. FLETCHER, Circuit Judge:

The State of California appeals the district court's grant of James Kendell Wilkinson's petition for a writ of habeas corpus.[1] Wilkinson was convicted of perjury for testifying in a traffic court proceeding that he was not the driver of a car that had been stopped for speeding and whose driver had been ticketed. The State brought the perjury prosecution after Wilkinson was acquitted of the speeding offense. We agree with the district court that the state appellate court unreasonably applied *Ashe v. Swenson*, 397 U.S. 436 (1970), when it held that Wilkinson's acquittal in traffic court did not bar the subsequent perjury prosecution. *See* 28 U.S.C. § 2254(d)(1). The principle of collateral estoppel embodied in the Fifth Amendment's protection against double jeopardy, as clearly established in *Ashe*, precludes relitigation of ultimate issues that were necessarily decided in a prior proceeding between the parties. *Ashe*, 397 U.S. at 443. In this case, the traffic court necessarily decided, in Wilkinson's favor, an issue that was critical to both the traffic court and perjury proceedings—that Wilkinson was not the driver of the speeding car. The State was therefore precluded by the Double Jeopardy Clause from bringing the perjury prosecution.

---

[1] Wilkinson filed his habeas petition under the name "James Kendell Wilkinson." In other documents in the record, including the jury form from the conviction he collaterally attacks, his name appears as "James Kendall Wilkinson."

## I. Background

### A. The Traffic Court Proceeding

On January 20, 2007, Officer Mark Magrann of the California Highway Patrol pulled over a car he recorded traveling at 101 miles per hour, well over the speed limit. The driver identified himself as Kendall Wilkinson and presented a United Kingdom driver's license bearing that name. The license did not include a photograph. The car was registered to Charmaine Wilkinson,[2] who was a passenger in the car and who is married to the appellant. Charmaine testified in the later perjury trial that Kendall Wilkinson is her husband's cousin. During the brief traffic stop, the driver remarked to Officer Magrann that traveling at high speeds is normal in other countries. Officer Magrann issued a citation that ordered the driver to appear in Superior Court (the "traffic court") for a hearing. The signature on the citation appears to read "J. Wilkinson."

When the driver did not show up for the scheduled hearing, the traffic court issued an arrest warrant for "Kendal [sic] Wilkinson." The sheriff's department arrested Wilkinson on the warrant.

The traffic court held a trial on July 30, 2007, at which Wilkinson and Officer Magrann appeared. There is no transcript of the trial, but the parties do not dispute the essentials of what transpired. Wilkinson testified that he was not the driver of the car. He also provided a Nevada license bearing the name "James Kendell Wilkinson" and a photograph. Both Officer Magrann and the judge examined

---

[2] Charmaine also goes by the name "Deborah Charmaine Wilkinson."

the driver's license.  Officer Magrann testified in the later perjury trial that the photograph on the Nevada driver's license "appear[ed] to be" Wilkinson.  He testified further that "once [Wilkinson] put that driver's license down with the different name, different date of birth, it was authentic, I've seen Nevada driver's licences before and it just made me question—made me doubt as to whether he was actually driving the vehicle."  Officer Magrann recounted that he had testified in traffic court that he was "approximately . . . about 98 percent sure" that Wilkinson had been the driver.

The traffic court judge acquitted Wilkinson.  The following entry appears on the court's docket sheet:  "The Court finds the defendant NOT GUILTY as to all counts as charged in the Original Citation.  The person in court states that they are not the same person named in the Citation."

After the traffic court hearing ended, Officer Magrann spoke with Wilkinson in the hallway.  Wilkinson noted that driving over one hundred miles per hour is not a big deal in other countries.  Wilkinson spoke with what Officer Magrann described as the same arrogance of the driver he had stopped. At that point, it "clicked" for Officer Magrann, and he concluded that Wilkinson had indeed been the driver.

## B.  The Perjury Proceeding

The next day, Officer Magrann initiated an investigation of Wilkinson.  About six months later, nine or ten police officers, with their guns drawn, broke down the door to execute a search warrant at Wilkinson's home.  Once inside the home, the officers discovered folders containing traffic citations.  One folder was labeled "Jim's tickets."  Another folder was labeled "Kendall Wilkinson," and contained the

speeding ticket from January 20, 2007. Police also discovered a ticket issued to Reginald Freuchet, a French citizen. Charmaine testified during the perjury trial that Freuchet had stayed at their house and driven her husband's car, and that he had features similar to those of her husband.

The State charged Wilkinson with perjury in violation of California Penal Code § 118(a). At the start of the perjury trial, Wilkinson objected that the prosecution was barred by collateral estoppel and the Double Jeopardy Clause. The trial judge overruled the objection, reasoning that "if the court were to accept the theory of collateral estoppel, then the end result would mean that nobody could ever be prosecuted for perjury if they were successful in maintaining the perjury or the fraud."

In his testimony, Officer Magrann recounted what had happened in the traffic court trial and identified Wilkinson as the driver he stopped on January 20, 2007. Charmaine testified that Kendall, her husband's cousin, was the driver and that she had not spoken to him since the day of the stop. Wilkinson testified that he was not the driver. Kendall did not testify or otherwise appear.

The trial judge instructed the jury that, in order to convict Wilkinson of perjury, it must find, among other things, that Wilkinson "willfully stated that the information was true even though he knew it was false," and that when "[Wilkinson] made the false statement, he intended to testify falsely while under oath." The judge also informed the jury that "[t]he People allege that the defendant made the following false statement: that he was not the driver of the vehicle on January 20th, 2007."

The jury convicted Wilkinson. He was sentenced to forty-five days in the county jail and three years of probation.

The California Court of Appeal affirmed Wilkinson's conviction. The court discussed several state court opinions refusing to apply collateral estoppel to subsequent perjury prosecutions for fear of incentivizing or rewarding perjury. The Court of Appeal wrote, however, that there was no need to "wade into the thicket of competing policy considerations" because Wilkinson had not established the "threshold requirements of collateral estoppel." The court held that collateral estoppel did not bar the perjury prosecution because Wilkinson had not shown that the traffic court judge necessarily determined that he testified truthfully in traffic court. The Court of Appeal reasoned that the traffic court judge did not necessarily make a finding as to Wilkinson's veracity because it could have acquitted Wilkinson based on Officer Magrann's doubt about whether Wilkinson was the driver. The court wrote that the Supreme Court's decision in *Ashe v. Swenson* had "limited application" to Wilkinson's case because the *Ashe* defendant's veracity was not at issue, and therefore not necessarily decided, in the first trial.

## C.  Federal Habeas Proceedings

After the California Supreme Court denied Wilkinson's petition for review, Wilkinson filed a habeas petition in federal district court under 28 U.S.C. § 2254. He claimed, among other things, that because of his acquittal in the traffic court proceeding the State was collaterally estopped, and therefore barred by the Double Jeopardy Clause, from prosecuting him for perjury. The magistrate judge agreed and recommended granting Wilkinson's petition. According to the magistrate judge, the state court unreasonably applied

*Ashe v. Swenson* when it failed to recognize that the traffic court judge necessarily decided an issue of ultimate fact in the traffic court proceeding that was also an issue of ultimate fact in the perjury trial—whether Wilkinson was the driver.

The district court adopted the magistrate judge's recommendation and entered judgment granting a writ of habeas corpus. The State timely appealed. After filing his pro se answering brief in this court, Wilkinson moved for the appointment of counsel. We appointed counsel, who filed a replacement answering brief on Wilkinson's behalf.

## II. Standard of Review

We review de novo the district court's grant of a § 2254 habeas petition. *Doody v. Ryan*, 649 F.3d 986, 1001 (9th Cir. 2011) (en banc). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a habeas petition unless, as is relevant here, the state court unreasonably applied law clearly established by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "[U]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Moses v. Payne*, 555 F.3d 742, 751 (9th Cir. 2009) (alterations in original) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). An "unreasonable application" of Supreme Court law "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Andrade*, 538 U.S. at 75–76).

### III.  Discussion

#### A. Collateral Estoppel and *Ashe v. Swenson*

Collateral estoppel is "an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments." *Harris v. Washington*, 404 U.S. 55, 56 (1971) (per curiam).  Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443; *see Wilson v. Belleque*, 554 F.3d 816, 830 (9th Cir. 2009) ("In a criminal case, collateral estoppel precludes the state from bringing a charge when a previous 'jury resolve[d], in a manner adverse to the government, an issue that the government would be required to prove in order to obtain a . . . conviction at the second trial.'" (alterations in original) (quoting *United States v. Castillo-Basa*, 483 F.3d 890, 899 (9th Cir. 2007))).  In determining whether an issue of ultimate fact has been decided in a prior proceeding, we examine, "in a practical frame," the record and circumstances of the first proceeding. *Ashe*, 397 U.S. at 444 (citation omitted); *see id*. ("[T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.").

The Supreme Court "significantly expanded" the protection the Double Jeopardy Clause affords criminal defendants when, in *Ashe v. Swenson*, it imported into the Clause the doctrine of criminal collateral estoppel. *Dowling v. United States*, 493 U.S. 342, 356 (1990) (Brennan, J., dissenting); *see id*. ("[I]n addition to being protected against retrial for the 'same offense,' the defendant is protected

against prosecution for an offense that requires proof of a fact found in his favor in a prior proceeding."). In *Ashe*, the defendant was accused of robbing six participants in a poker game. There was no doubt that a robbery occurred; the only dispute was whether the defendant was one of the robbers. 397 U.S. at 445. After the defendant was tried and acquitted for robbing one of the players, the state prosecuted him for robbing a different player. The state's evidence of the robber's identity was stronger in the second case, and the defendant was convicted. *Id*. at 439–40. The Supreme Court reversed the conviction, holding that if a defendant can show that an issue of fact essential for the proof of an offense for which the defendant is later prosecuted was necessarily decided in a prior proceeding, that determination will be binding upon the later prosecution. *Id*. at 445. An essential, or ultimate, issue of fact in *Ashe* was the identity of the robber. Because the state "had failed to prove beyond a reasonable doubt" that the defendant was one of the robbers, the state was barred by the doctrine of collateral estoppel from trying the defendant for the robbery of the other poker players, "since identity would be an ultimate issue in each such trial." *Santamaria v. Horsley*, 133 F.3d 1242, 1245 (9th Cir. 1998) (en banc) (citing *Ashe*, 397 U.S. at 445).

In this case, the State argues that collateral estoppel and the Double Jeopardy Clause did not bar the perjury prosecution because the traffic court judge did not necessarily decide the issue in the perjury trial—whether Wilkinson testified truthfully in traffic court. The state Court of Appeal was of the same view, concluding that Wilkinson's veracity was the ultimate issue in the perjury trial, but that it could not know if the traffic court judge believed that Wilkinson was being honest when he denied being the driver. We hold that the Court of Appeal unreasonably applied *Ashe v. Swenson* in

concluding that collateral estoppel and the Double Jeopardy Clause did not apply.

The Court of Appeal failed to recognize that the driver's identity was necessarily at issue in both the traffic and perjury prosecutions. In one sense, the State is correct in contending that the two proceedings posed different questions. Narrowly construed, the question in the traffic court proceeding was whether Wilkinson was the driver of the speeding car, and the question in the perjury proceeding was whether Wilkinson gave false testimony in traffic court when he denied being that driver. But the State is incorrect in contending that this difference means that collateral estoppel and the Double Jeopardy Clause do not apply. A second prosecution is impermissible when "to have convicted the defendant in the second trial, the second jury had to have reached a directly contrary conclusion [to the factfinder in the first trial]." *Dowling*, 493 U.S. at 348 (majority opinion).

Resolution of the issue in the first case (whether Wilkinson was the driver) and the issue in the second case (whether Wilkinson was telling the truth when he denied being the driver) both turned on the factfinders' conclusions regarding the identity of the driver. The driver's identity was plainly the ultimate issue in the traffic court proceeding. There was no dispute that the driver, whoever he was, was speeding. The only question was whether Wilkinson was the driver. The traffic court docket and the parties' accounts of what transpired in traffic court confirm that this was the only contested issue in traffic court. The driver's identity was also an ultimate issue in the perjury prosecution. The jury was instructed that it needed to find that Wilkinson knowingly made a false statement in order to convict him of perjury. The judge explained that the alleged false statement was that

Wilkinson "was not the driver of the vehicle on January 20th, 2007." If Wilkinson was not the driver, then his statement that he was not the driver was not false, and he did not commit perjury.

The traffic court judge in the first case "actually decided" the ultimate issue in the second case. *See Dowling*, 493 U.S. at 350. As Wilkinson contends, and as the district court agreed, the traffic court judge acquitted Wilkinson because he was not the driver of the car. In acquitting Wilkinson in the first case, the traffic court judge thus actually and necessarily decided that Wilkinson was not the driver, and that he had been telling the truth in so stating. Collateral estoppel and the Double Jeopardy clause apply.

The State argues that we do not know on what basis the traffic court acquitted Wilkinson, offering three different reasons the traffic court judge might have had for acquitting Wilkinson: (1) he believed Wilkinson was telling the truth; (2) he did not believe the officer was telling the truth; and (3) he concluded that the State had not met its burden of proof. This argument fails to recognize that each of these reasons goes to whether Wilkinson was the driver. The traffic court judge (1) may have believed Wilkinson was telling the truth *that he was not the driver*, (2) he may have believed that the officer was not telling the truth *that Wilkinson was the driver*, or (3) he may have believed that the State had not sufficiently proven *that Wilkinson was the driver*. However the traffic court judge reached his conclusion that Wilkinson should be acquitted, the "single rationally conceivable" basis on which he could have done so was that Wilkinson was not the driver. *Ashe*, 397 U.S. at 445.

It does not matter that the traffic court judge might have concluded that Wilkinson was not the driver only because the State failed to carry its burden of proof. In both the traffic court proceeding and the perjury proceeding, the State's burden of proof was beyond a reasonable doubt. A factfinder's determination that the government failed to carry its burden on an issue in the first proceeding has preclusive effect in a subsequent proceeding raising that same issue, provided that both proceedings are governed by the same standard of proof. *See Charles v. Hickman*, 228 F.3d 981, 985–86 (9th Cir. 2000); *cf. Evans v. Michigan*, 133 S. Ct. 1069, 1075 (2013) (noting that an acquittal includes "a ruling by the court that the evidence is insufficient to convict" and a "factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability" (alterations in original) (quoting *United States v. Scott*, 437 U.S. 82, 91, 98 (1978)). *Ashe* itself held that the first jury's determination that "there was at least a reasonable doubt" as to an ultimate issue precluded relitigation of that issue in a subsequent prosecution. *Ashe*, 397 U.S. at 446. If we were to conclude otherwise, "it would not only fundamentally change our system of jurisprudence, but it would render every acquittal by a jury meaningless for purposes of double jeopardy: a jury can *always* be said to have concluded only that the prosecution failed to prove its case beyond a reasonable doubt." *Castillo-Basa*, 483 F.3d at 902.

## B. Fairminded Disagreement

AEDPA requires more than a mere mistake by the state court. We can grant habeas relief in a case governed by AEDPA only if the state court *unreasonably* applied law clearly established by the Supreme Court. 28 U.S.C. § 2254(d)(1). "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The State argues that the state court's decision, even if based on a misapplication of *Ashe*, was not unreasonable because fairminded jurists disagree about whether collateral estoppel applies to perjury prosecutions at all, or at least whether it applies to perjury prosecutions presenting newly discovered evidence of a defendant's dishonesty. For support, the State cites several decisions of state courts that read *Ashe* narrowly. One is a decision by an intermediate Illinois appellate court whose facts are roughly similar to the facts of this case. *See People v. Briddle*, 405 N.E.2d 1357, 1361–62 (Ill. App. Ct. 1980) (reinstating a perjury prosecution against a defendant for statements he made in traffic court about the kind of car he was driving when he was pulled over for speeding, even though he was acquitted of the speeding charge). Two others are decisions of the Supreme Courts of Wisconsin and Louisiana. *See State v. Canon*, 622 N.W.2d 270, 277 (Wisc. 2001) (announcing a "narrow newly discovered evidence exception to issue preclusion" in perjury cases); *State v. Bolden*, 639 So. 2d 721, 725 (La. 1994) (recognizing that *Ashe* generally bars a perjury prosecution when a defendant's credibility on an issue was necessarily decided in a prior proceeding but making an exception for the "unique circumstance[]" of the discovery of new evidence of the defendant's dishonesty). However, a state court decision is not reasonable under AEDPA simply because another judge—or even several other judges— arrived at the same incorrect conclusion. *See Williams*, 529 U.S. at 409–10.

The Supreme Court has not applied *Ashe* to foreclose a subsequent perjury prosecution, but the Court has made clear that collateral estoppel and the Double Jeopardy Clause apply regardless of the nature of the offense or the availability of new evidence. First, the Court has applied the rule of *Ashe* to many kinds of prosecutions, and has never limited its reach to certain categories of criminal offenses, as the State now suggests is appropriate. *See, e.g.*, *Harris*, 404 U.S. at 56 (holding that a second murder prosecution was precluded by defendant's acquittal in first murder trial); *Turner v. Arkansas*, 407 U.S. 366, 370 (1972) (per curiam) (holding that a subsequent prosecution for robbery was precluded by the defendant's prior acquittal for murder; the "case is thus squarely controlled by *Ashe v. Swenson*"). In a decision predating *Ashe*, the Court signaled that collateral estoppel could bar prosecutions for perjury. *See United States v. Williams*, 341 U.S. 58, 63 (1951) ("Though former jeopardy by trial for the substantive crimes is not available as a defense against this perjury indictment, it could be that acquittal on the substantive charges would operate 'to conclude those matters in issue which the verdict determined though the offenses be different.'" (quoting *Sealfon v. United States*, 332 U.S. 575, 578 (1948))). Although members of our court have disagreed about whether the elements of collateral estoppel have been satisfied in a particular perjury case, we have long recognized that the rule of *Ashe* generally applies to perjury prosecutions. *See United States v. Castillo-Basa*, 494 F.3d 1217, 1221 (9th Cir. 2007) (Callahan, J., dissenting from the denial of rehearing en banc) (acknowledging that "where a defendant secures an acquittal by lying *about an element of a crime,* the Double Jeopardy Clause bars the government from seeking to retry the defendant for the first offense or prosecuting the defendant for perjury"); *Hernandez*, 572 F.2d at 220.

Second, the Supreme Court has held that collateral estoppel applies "irrespective of whether the jury considered all relevant evidence, and irrespective of the good faith of the State in bringing successive prosecutions." *Harris*, 404 U.S. at 56–57; *see also Castillo-Basa*, 483 F.3d at 903 ("The Fifth Amendment, as interpreted in *Ashe v. Swenson*, bars relitigation of an issue already decided, no matter how much additional evidence the government may wish to introduce at a second proceeding."). Indeed, in *Ashe* the Court made clear that collateral estoppel applies even if the government can marshal better evidence the second time around. *See Ashe*, 397 U.S. at 446 ("Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing.").

Collateral estoppel "is a part of the Fifth Amendment's guarantee against double jeopardy." *Id.* at 442. That guarantee is not suspended simply because prosecutors uncover new evidence showing that defendants who were acquitted after taking the stand were lying when they testified that they did not commit the charged offenses. Permitting a perjury exception to the protection the Double Jeopardy Clause affords a defendant would undermine the "overriding concern" of the Clause, which is to prevent the government "with its vastly superior resources," from "wear[ing] down the defendant, so that 'even though innocent he may be found guilty.'" *Dowling*, 493 U.S. at 355 (Brennan, J., dissenting) (alteration in original) (quoting *Scott*, 437 U.S. at 91, 98). The handful of state court decisions that mistakenly attempt to carve out a special exception to the Constitution's

protection against double jeopardy for perjury prosecutions do not represent "fairminded disagreement" on an open question of constitutional law. Rather, they represent a fundamental misunderstanding of the Double Jeopardy Clause and the Supreme Court decisions that explain its purpose and operation.

## Conclusion

For the foregoing reasons, we hold that the state court unreasonably applied the rule of collateral estoppel, as clearly established in *Ashe v. Swenson*, when it upheld Wilkinson's perjury conviction. We therefore affirm the judgment of the district court granting Wilkinson's petition for a writ of habeas corpus.

**AFFIRMED.**